39	509
39	520
39	521
39	656
39	657

39	509
d78	.206

THE STATE OF KANSAS, *ex rel.*, *D. C. Lewis, County Attorney*, v. D. T. DENNIS.

1. SCHOOL LAND — *Sale — Contract — Insufficient Grounds for Cancellation.* In an action to set aside a contract and cancel a certificate evidencing a private sale of school land to a settler which had been assigned to another, it was alleged that all of the persons who signed the petition requesting a sale of the school land were not legal householders, and also that the appraisers appointed to appraise the land were not disinterested householders; but it was not averred or claimed that the officers acted dishonestly in determining the sufficiency of the petition, or in appointing the appraisers, nor that the assignee of the school-land contract had any knowledge of any incompetency on the part of the petitioners or appraisers, nor yet that he had any notice of any irregularities in the proceedings preliminary to the sale: *Held,* That the defects mentioned are not sufficient grounds for the cancellation of the contract in the hands of the assignee.

2. SETTLER *Upon School Land — Jurisdiction of Probate Court.* The probate court is invested with jurisdiction to hear and determine whether a settler upon school land is qualified and entitled to purchase the land at the appraised value, and its decision upon the facts duly submitted, and upon every question involved, is binding upon both the settler and the state unless appealed from.

3. SCHOOL LAND — *Contract for Sale — Action to Annul — The State to do Equity.* Where the state voluntarily comes into court, asking the determination of its rights in a mere business transaction with an individual, the same rules will generally govern as are applicable in controversies between other parties; and before the state can maintain an action to annul a contract for the sale of school land held by an innocent assignee, on account of irregularities or non-compliance with the statutory requirements for a sale, it must do equity by paying or tendering back the purchase-money received under the contract.

*Error from Pratt District Court.*

ACTION by *The State* against *Dennis*, to cancel four school-land certificates held by the defendant by assignment, for alleged frauds and irregularities in the issurance thereof.    The court below overruled a demurrer to the petition, but after the issues were joined and the case called for trial, at the April term, 1886, sustained an objection to the introduction of any evidence on the part of the state, on the ground that the petition did not state facts sufficient to constitute a cause of action. The plaintiff not desiring to amend the petition, but electing to stand thereon, the court dismissed the action.    *The State* brings the case here.    The opinion states the facts.

*S. B. Bradford*, attorney general, for The State.

*Simpson, Bowker & Travis*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The county attorney of Pratt county brought this action in the name of the state against D. T. Dennis, to cancel and set aside four school-land certificates issued by the county clerk of that county, each of which evidenced the sale of a quarter-section of school land situate in Pratt county. The lands were sold at private sale to actual settlers at the appraised value, who sold the same and assigned the certificates to another, and the defendant, Dennis, purchased all four of the tracts from the assignee of these settlers.    It is alleged in the petition that on March 22, 1884, C. A. Hopper purchased the southwest quarter of section 16, township 28 south, of range 13 west, and upon the same day the county clerk issued a certificate of purchase to him, and that in April, 1884, Hopper transferred his certificate and all his title and interest therein to T. E. Simpson, who on January 13, 1885, assigned and transferred the certificate of purchase and his rights thereunder to D. T. Dennis, the defendant.    It is also alleged that Millie Hopper purchased the west half of the northeast quarter and the west half of the southeast quarter of section 16,

township 28 south, of range 13 west, as a settler, on March 22, 1884, and obtained a certificate of purchase, and that she assigned and transferred her certificate to T. E. Simpson on April 11, 1884, who assigned and transferred the certificate and his interest therein to the defendant, Dennis, on January 13, 1885. It is also alleged that A. Davis, as a settler, purchased the northwest quarter of section 16, township 28 south, of range 13 west, on March 22, 1884, and that he subsequently assigned and transferred his certificate to W. B. Hopper, and that on April 13, 1884, W. B. Hopper assigned and transferred the certificate of purchase and his interest therein to T. E. Simpson, and that on January 13, 1885, T. E. Simpson assigned and transferred the certificate to the defendant, D. T. Dennis. It is further alleged that on May 24, 1884, W. B. Hopper purchased at public sale the east half of the northeast quarter and the east half of the southeast quarter of the same section, and on the same day the certificate was issued to him; that on September 15, 1884, W. B. Hopper assigned and transferred his certificate and his interest therein to T. E. Simpson, and that on January 13, 1885, T. E. Simpson assigned and transferred the certificate to the defendant, D. T. Dennis.

These sales are alleged to be illegal on account of irregularities in the proceedings preliminary to the sales; and the grounds upon which a cancellation is asked are substantially the same in all of the cases, and only the allegations respecting the first sale to C. A. Hopper are necessary to be stated at length. The certificate is said to have been issued without authority, because —

"The petition presented to the superintendent of public schools of Pratt county, Kansas, on the 6th day of January, 1884, praying that said land be exposed for sale, and upon which said certificate is pretended to have been issued, was not signed, made nor presented by a sufficient number of householders of the townships in which such land was then situated, to authorize the appraisement and sale of said land; that of the persons joining in said petition, and whose names are appended thereto, only eighteen were at that time legal householders of the township in which said land was then situated, to wit, the township of Saratoga, county of Pratt, state of

Kansas; that the persons appointed by the said superintendent of public schools were not so appointed by and with the consent of the board of county commissioners of said county, in the manner provided by law, and were not at the time disinterested householders of said county, township, and state; that the appraisement returned by said appraisers was not made in the manner prescribed by law; that said land was not legally exposed for sale, and was not legally appraised, prior to said sale, in the manner prescribed by law; that said certificate of purchase for said land, so issued to said C. A. Hopper on the 22d day of March, 1884, and assigned by mesne assignment to the defendant herein, D. T. Dennis, is further fraudulent and void for that the petition presented to the probate court of Pratt county, Kansas, on the 21st day of March, 1884, stating that the said C. A. Hopper had settled upon and improved said land, is false and fraudulent; that said C. A. Hopper was not at that time and never has been a settler on said land in good faith; that said C. A. Hopper had not at that time made improvements on said land, and never has made any improvements thereon in good faith; that said C. A. Hopper signed said petition and verified the same, and presented it to the probate court of Pratt county, at the instance and for the benefit of his father, one W. B. Hopper, who was not at that time and never has been an actual settler upon said land, nor improved the same; that said petition and proof introduced thereunder was false and fraudulent, and was made for the purpose of defrauding the state of Kansas."

The only variance in the averments respecting the other sales and certificates from what has been stated, is in the case of the second certificate, where it is alleged that the purchaser, Millie Hopper, was a minor, and incompetent to petition the probate court for permission to purchase the land; and that for the same reason she had no authority to appoint her father as her attorney, who as such attorney and in her behalf presented her petition to the probate court. Then, again, the purchase made by W. B. Hopper was at a public sale; and hence that case differs from the others in this, that the allegations respecting settlement and improvement and proof of the same before the probate court are omitted. But the same irregularities in regard to petitioning for the sale as well as the appraisement, are charged as in the other cases.

There was an answer by the defendant, to which a reply was filed, and at the trial the court sustained the objection to the introduction of any evidence on the part of the state, on the ground that the petition did not state facts sufficient to constitute a cause of action. The plaintiff not desiring to amend, but electing to stand upon the petition, the case was dismissed; and upon these rulings error is assigned.

The rulings of the court holding the petition to be insufficient, must be sustained. In the first place, there is no claim or pretense that the defendant, Dennis, was guilty of any wrong in the purchase, or that he had any notice of the wrongdoing charged against the original purchasers. It is not claimed that any of the irregularities alleged in the petition ever were brought to his notice, nor yet to his assignor. It is averred that the preliminary petition requesting the county superintendent of public schools to cause a sale of the school land was insufficient, because that of the names attached only eighteen were at the time of the presentation legal householders. The statute provides that the county superintendent shall cause a sale of the school land to be made whenever twenty householders petition therefor. The pleader does not state how many names were appended to the petition, and it may be fairly inferred that the names of at least twenty persons were attached to it. The averment is, that of the persons joining in the petition only eighteen at that time were householders. The time referred to is the 6th day of January, 1884, when the petition was presented, and the sale was not made until the 22d of March, 1884. It is not alleged that there were less than twenty householders upon the petition when it was acted upon by the county superintendent. The petition is only a preliminary step leading up to a sale. It is addressed to the county superintendent, and upon him devolves the duty of determining its sufficiency. There is no allegation or claim that the county superintendent was guilty of any fraud in determining the sufficiency of the petition, and, in the absence of a specific allegation to the contrary, we must presume that the officer did his duty, and that the petition contained a suf-

33 — 39 KAS.

ficient number of names when it was acted upon.   However, a mistake made by the county superintendent in regard to the qualifications of the persons whose names are appended to the petition, where he has acted in good faith, would hardly be sufficient to set aside the sale.   Especially is this true where the purchaser or owner of the land has neither actual nor constructive notice of the error.

1. School land; insufficient grounds for setting aside sale.

The next defect alleged is, that the persons appointed as appraisers were not disinterested householders of the township in which the land lies, and the appraisement was not made in the manner prescribed by law.   It is not necessary that the appraisers should reside in the township in which the land is situated.   It is required that the county superintendent, by and with the consent of the county commissioners, shall appoint three disinterested householders residing in the county in which the land is situated, who shall take an oath to faithfully perform their duties under the appointment. (Comp. Laws of 1885, ch. 92, § 205.)   The allegation that the appraisement was not made in the manner prescribed by law, is a mere conclusion of law, and is of no value in the pleading. For anything that appears, the officers acted in good faith in appointing the appraisers, and no specific statement of facts is set forth showing any undue interest or wrongdoing on the part of the appraisers.   It is not stated that the land was appraised at less than $3 an acre or at less than its true value, nor is there any averment that the state was in any way injured or damaged by reason of the irregularities set forth. Presumably the officers acted honestly in making the appointment, and the same presumption attaches to the appraisers, who took an oath faithfully to perform the duties assigned to them.   Even if the appraisers were not disinterested, there is no statement that either Dennis or his assignor had any knowledge of this or of any dereliction on their part; and therefore his rights in the land cannot be affected by the irregularity charged.

The certificates are said to be fraudulent and void because

the petition presented to the probate court representing that certain persons had settled upon and improved the lands is false, and it is averred that they never became settlers on the lands in good faith, and never made any improvements thereon. These questions and the right of the parties to purchase have once been determined by a court of competent jurisdiction, and are not now open. The probate court is invested with jurisdiction to determine who is entitled to purchase at the appraised value, and the procedure in such cases is prescribed by the statute. (Comp. Laws of 1885, ch. 92, §§ 207–209.) The proposed purchaser is required to file a petition setting forth facts showing his right to purchase, and must prove the same to the satisfaction of that court. The county superintendent may appear and introduce testimony to controvert that which is offered in behalf of the petitioner, and the county attorney may appear and assist the superintendent in the trial. If the state was aggrieved by the decision of the probate court upon the question of the right of the petitioners to purchase the lands, the county superintendent could have taken an appeal to the district court, where the case could have been again heard, and the questions reëxamined and decided. The probate court had jurisdiction of the subject-matter and of the parties, and its decision upon every question involved is binding upon both parties unless appealed from.

2. Settler upon school land; jurisdiction of probate court.

But, waiving the questions we have been considering, the ruling of the court must be upheld upon another ground. The claim of the attorney general that the state can maintain an action to cancel a certificate of sale or set aside a contract upon certain grounds must be and is conceded; but, before doing so, must not the state conform to the general rules of equity governing all other suitors? An individual coming into court and asking the cancellation of a contract in a case like this would be required to pay or tender back the amount received by him on the contract. (*Jeffers v. Forbes*, 28 Kas. 181.) The state has received upon each of the sales of school land one-tenth of the purchase-price and the accruing interest

on the unpaid balance, and should it not do equity by restoring the same before insisting upon the equitable aid of the court to set aside the certificate and contract under which the money was paid? It is true the state cannot be compelled to litigate controversies with individuals; but when it voluntarily comes into court asking the determination of its rights in a mere business transaction with an individual, it would seem that it should be judged by the same rules and principles as are applied in controversies between other parties. The supreme court of New York, in treating upon this question, says:

3. The state as a suitor—how treated—to do equity.

"When it becomes a suitor it waives for the time its dignity as a sovereign. It lays aside its strong arm by which it can at once enforce its own claims, and submits itself to the arbitration of the courts and its practice and its proceedings. For this purpose it is like an individual or an inferior corporation, and becoming voluntarily a party to a suit, no good reason can be given why it should not be bound by the same rules that are applicable to other parties in the same position." (*The People v. Brandreth,* 36 N. Y. 196.)

The same court, in a later case, says that—

"The state in all its contracts and dealings with individuals must be adjudged and abide by the rules which govern in determining the rights of private citizens contracting and dealing with each other. There is not one law for the sovereign and another for the subject; but when the sovereign engages in business and the conduct of business enterprises and contracts with individuals, although an action may not lie against the sovereign for a breach of the contract, whenever the contract in any form comes before the courts the rights and obligations of the contracting parties must be adjusted upon the same principles as if both contracting parties were private persons. Both stand upon equality before the law, and the sovereign is merged in the dealer, contractor and suitor." (*People v. Stephens,* 71 N. Y. 549.)

See also *United States v. Arredondo,* 6 Pet. 692, 711; *Sholes v. The State,* 2 Chand. (Wis.) 182; *The State v. Delafield,* 8 Paige, 533; *United States v. Bank of Metropolis,* 40 U. S. 377; *Floyd Acceptances,* 7 Wall. 675; *Whitaker v. Cone,* 2

Johns. Cas. 58; *Woodworth v. Rathbun,* 2 id. 418; *Metzel v. The State,* 16 Wis. 370.

In *The State v. Cross,* 38 Kas. 696, 17 Pac. Rep. 190, it was held that a tender by the state of the money received on a contract was not a prerequisite to the annulment of the contract. But that case differs greatly from this one. There it was alleged that the defendant was guilty of bribing the officers who contracted for the state with him, and it was held that if the charge was established nothing whatever could be claimed under the contract. On grounds of public policy the corrupt and criminal act is repudiated by the court, and the briber is left where he stands. The principles governing that case and upon which the decision rests are fully stated by the Chief Justice, but they have no application to the case at bar.

For the reasons stated it must be held that the petition did not state a cause of action against the defendant, and therefore the judgment of the district court will be affirmed.

All the Justices concurring.