## J. W. FRISTOE v. LEON & H. BLUM.

No. 666. Decided May 30, 1898.

**1. State—Contracts By.**

So long as the State is engaged in the discharge of governmental functions it is to be regarded as a sovereign, but when it becomes a party to a contract with a citizen the same law applies to it as under like conditions governs the contracts of an individual. (Pp. 80, 81.)

**2. State as Vendor of Land—Nonpayment—Rescission.**

One who contracts with the State to acquire land on completion of deferred payments thereon, acquires, so long as he pays the purchase money and interest, rights

in the land of which the State can not deprive him; but the State has by common law the right as a vendor, upon the purchaser's failure to perform his part of the contract, to rescind the sale made to him and resume its control of the land. (P. 81.)

**3. School Land—Forfeiture—Act of 1887 Construed—Antecedent Contract.**

The provision of section 11 in the act for sale of school lands of April 1, 1887, for declaring a forfeiture upon default in making payment of "any obligation" applies to antecedent as well as to prospective contracts. (Pp. 81, 82.)

**4. Same.**

Section 25, declaring that such act shall not be construed to "impair or interfere with" or affect any sale made under former laws, does not make section 11 apply only to prospective contracts. Empowering the Commissioner of the Land Office to declare forfeiture of a contract on noncompliance by the purchaser, does not impair, interfere with, or affect any right acquired by such purchaser under the contract. (Pp. 82, 83.)

**5. Same—Constitution.**

Such construction does not render the statute unconstitutional as violating the obligation of a contract. The right to declare a forfeiture existing in this case when the contract was made, its repeal would impose no obligation on the State not to restore it. And where a right exists—as here to rescind for nonpayment— the Legislature may give a new remedy, provided it does not deprive either party of a substantial right. (Pp. 83, 84.)

**6. Same—Interest—Change in Time of Payment.**

The extension of time of paying interest on previous contracts from March 1 to August 1, involved in this construction of the act, did not change the terms of contract. The purchaser still had the right to pay interest at its maturity according to his contract and an indulgence of five months added nothing to his burden. (Pp. 84, 85.)

**7. Forfeiture—Judicial Act.**

The power conferred by the Act of April 1, 1887, upon the Commissioner of the General Land Office to declare forfeitures of contracts for purchase of school land on default in payments is no more judicial, though exercised on behalf of the State, than if done by an individual vendor or his agent, and is inaptly described in the statute as a forfeiture. (P. 85.)

**8. Case Criticised.**

The rulings in Berrendo Stock Co. v. McCarty, 85 Texas, 412, explained as not in conflict with this opinion, but approval of that decision withheld. (P. 85.)

ERROR to the Court of Civil Appeals for the Third District, in an appeal from Coke County.

Leon & H. Blum sued Fristoe in trespass to try title and appealed from a judgment for defendant. The Court of Civil Appeals having reversed and rendered judgment for appellants, Fristoe obtained writ of error.

*Perryman & Patterson* and *D. T. Averitt,* for plaintiff in error.—The Court of Civil Appeals erred in holding that the forfeiture in this instance, having been made on May 28, 1895, was premature and that the same was under the Act of 1895, and that no forfeiture could be taken under said act prior to November, 1895; because the Act of 1887, pages 86, 87, section 11, was in full force and effect, and ample authority existed under that act for the forfeiture. The Act of 1895 did not take effect until ninety days after the adjournment of the Legislature (Laws 1895, page 232), and that act was not in force when the said forfeiture

was entered, and the same was made under the Act of 1887. Act April 1, 1887, pp. 86, 87, sec. 11; Anderson v. Bank, 86 Texas, 618.

The Court of Civil Appeals erred in holding that the Legislature had no authority to change the contract under which defendants in error held title under the Act of 1883, and in holding that the Act of February 23, 1885, became a part of the contract under which they held their land, and that after its passage there could be no summary forfeitures for the nonpayment of annual interest, because said acts do not impair the obligation of the contract of purchase under which defendants in error hold title. Act April 1, 1887, pp. 86, 87, sec. 11; Anderson v. Bank, 86 Texas, 618.

*Guion & Truly*, for defendants in error.—The land in controversy having been regularly purchased from the State under the Act of the Legislature approved April 12, 1883, by I. M. Bennick, an actual settler thereon, and he having paid the principal due upon the first payment and the plaintiffs having shown mesne conveyances down to themselves from said Bennick, they were entitled to recover the land in this suit unless there had previously been a legal forfeiture by the proper authority of the right and title in said land derived by plaintiffs through said Bennick. Stock Co. v. McCarty, 85 Texas, 412; McCown v. McCafferty, 36 S. W. Rep., 517.

The forfeiture declared by the Commissioner of the General Land Office on May 28, 1895, was not a judicial forfeiture as required by law, therefore the purported purchase of the land in dispute by the appellee, J. W. Fristoe, did not have the effect to divest the right and title owned by plaintiff in the land; said Fristoe thereby had no title in said land, and the court should have rendered judgment for the appellant.

Under the Acts of 1887, section 25, page 83, governing the sales of State school lands and rights in purchasers under former laws, the plaintiffs had a vested right in the land in controversy by their purchase and the purchase of I. M. Bennick, and there was no authority authorizing the forfeiture of said land except by judicial ascertainment of the facts before the proper tribunal, to wit, the court having jurisdiction of the parties and subject matter.

An important distinction in statutory interpretation is made between things odious and things favored; the statutes creating the former sort being construed strictly, the latter liberally. A like principle, though not commonly designated by the same phrase, is recognized in construing contracts; the courts lean to what is beneficial, mutual, and just as between the parties, and discourage whatever is inequitable. Therefore it holds, for example, forfeitures and penalties in disfavor. Forfeitures will not be construed retrospectively. Furnace Co. v. Magill, 108 Ill., 656; Royalton v. Royalton, etc., Turnpike, 14 Vt., 311; Akin v. United States, 17 Ct. of Claims, 260; Parkhurst v. Smith, Willes, 327; Taylor v. Paterson, 9 La. Ann., 251; Crane v. Hyde Park, 135 Mass., 147; Sanders v. Maclean, 11 Q. B. D., 327; Wier v. Simmons, 55 Wis., 637;

Duryee v. New York, 96 N. Y., 477; Black on Interp. of Laws, secs. 256, 292, 295, 299; Trumpler v. Bemerly, 39 Cal., 490; Cool. Const. Lim., 5 ed., p. 445; Bishop, Written Laws, sec. 192.

BROWN, ASSOCIATE JUSTICE.—Prior to November 23, 1882, I. M. Bennick was in the actual possession in good faith of the land in controversy, it being section No. 278, Houston & Texas Central Railroad Company survey, in block No. 1-A in Coke County, Texas, located as an alternate section for the public free schools of Texas under the law granting lands to railroads. On October 8, 1883, I. M. Bennick made application to purchase said section in the form prescribed by the Acts of the Legislature of Texas of 1883 "to provide for the classification, sale, and lease of lands heretofore or hereafter surveyed and set apart for the benefit of the common school, university, and deaf and dumb asylum fund of the said State." Bennick made proper proof of occupancy. The land was duly appraised under the law of 1883 at $1 per acre, prior to Bennick's application. The land was properly awarded to I. M. Bennick on his application November 23, 1883, at the price of $1 per acre. He made the first payment of $21.33 principal, and interest $51.67. September 2, 1891, Bennick and wife in due form of law conveyed the land to D. P. Gay, by deed, which was recorded September 8, 1891. On December 10, 1894, Gay conveyed the land to Leon & H. Blum by deed recorded December 21, 1894.

The interest upon the purchase money of the land under Bennick's purchase was not paid to the State for the year ending January 1, 1892, and on the 28th day of May, 1895, the Commissioner of the General Land Office declared the contract of purchase forfeited and the land was again appraised under the law, which appraisement was recorded in the office of the clerk of the County Court of Coke County on the 2d day of September, 1895, and the Commissioner placed the land upon the market for sale. J. W. Fristoe applied to purchase the land on November 18, 1895, as an actual settler upon the land under the Act of the Legislature of the State of Texas approved April 16, 1895, and the Commissioner of the Land Office awarded the land to the said Fristoe on his application on the 24th day of December, 1895. Fristoe has made all payments of interest and principal required by law since the time of the award made to him.

Leon & H. Blum filed this suit in the District Court of Coke County on November 11, 1896, to recover from Fristoe the 640 acres of land awarded in the first place to I. M. Bennick, under whom Leon & H. Blum claimed as above shown. The case was tried without a jury before the court, which gave judgment for the defendant Fristoe; from which appeal was taken, and the Court of Civil Appeals for the Third Supreme Judicial District reversed the judgment of the District Court and rendered judgment in favor of Leon & H. Blum for the land.

The sole question presented by this writ of error is, was the Commissioner of the General Land Office authorized by law to declare the for-

feiture of the contract of purchase made by Bennick from the State of the section of school land involved in this suit? The defendant in error urges the following objections against the existence of the power at the time the forfeiture was declared:

1. That the Act of February 19, 1885, entitled "An Act to prevent the forfeiture of the rights of purchasers of public free school, university, or asylum land," repealed all power which had been vested in the Commissioner of the Land Office to declare such forfeiture, and especially it repealed section 10, as amended, of the act of the same session of the Legislature, approved February 16, 1885.

2. That section 11 of chapter 99 of the Laws of the Twentieth Legislature, page 83, does not apply to contracts made anterior to its passage, the first day of April, 1887.

3. That if the eleventh section of the law of April 1, 1887, was intended by the Legislature to apply to antecedent contracts, it is unconstitutional, because it would be retroactive and would violate the obligation of contracts of purchase made prior to that time.

A clear understanding of the relation in which the State stands to the purchasers in these contracts will greatly facilitate a proper solution of the questions upon which this case depends. It is well settled that so long as the State is engaged in making or enforcing laws or in the discharge of any other governmental function it is to be regarded as a sovereign and has prerogatives which do not appertain to the individual citizen, but when it becomes a suitor in its own courts or a party to a contract with a citizen the same law applies to it as under like conditions governs the contracts of an individual. State v. Kroner, 2 Texas, 492; State v. Purcell, 16 Texas, 305; Green v. State, 73 Cal., 32; Carr v. State, 127 Ind., 204; 22 Am. St. Rep., 624; State v. Snyder, 66 Texas, 700; State v. Cardozo, 8 S. C., 79; Patton v. Gilmer, 42 Ala., 548; 94 Am. Dec., 665; Danolds v. State, 89 N. Y., 36; 42 Am. Rep., 277; People v. Stepeens, 71 N. Y., 549; People v. Canal Commissioners, 5 Denio, 401; Coleman v. State, 134 N. Y., 564; State v. Dennis, 39 Kan., 509; Morton, Bliss & Co. v. Comptroller, 4 S. C., 448; Davis v. Gray, 16 Wall., 203; Co-operative Ed., book 21, p. 447; Railway v. United States, 14 Otto, 680; Co-operative Ed., book 26, p. 891.

In Carr v. State, 127 Indiana, 204, the Supreme Court of that State said: "As there is a perfect contract, the State is bound to perform it according to its legal tenor and effect, and to redeem the pledge it has declared to be irrevocable. In entering into the contract it laid aside its attributes as a sovereign, and bound itself substantially as one of its citizens does when he enters into a contract. Its contracts are interpreted as the contracts of individuals are, and the law which measures individuals' rights and responsibilities measures, with few exceptions, those of a State, whenever it enters into an ordinary business contract."

The Court of Appeals of the State of New York in the case of People v. Stepeens, 71 New York, 549, used the following language: "The State, in all its contracts and dealings with individuals, must be ad-

judged and abide by the rules which govern in determining the rights of private citizens contracting and dealing with each other. There is not one law for the sovereign and another for the subject; but when the sovereign engages in business and the conduct of business enterprises, and contracts with individuals, although an action may not lie against the sovereign for a breach of the contract, whenever the contract, in any form, comes before the courts the rights and obligations of the contracting parties must be adjusted upon the same principles as if both contracting parties were private persons. Both stand upon equality before the law, and the sovereign is merged in the dealer, contractor, and suitor."

The Supreme Court of South Carolina clearly announced the same doctrine in the case of Morton, Bliss & Co. v. Comptroller, in the following language: "When a sovereign State enters into a contract or bargain with an individual it assumes to be bound, in all particulars, as an individual under like circumstances would be bound, by what is expressed or properly implied by the terms of such contract. The measure of its obligation is that applied to individuals."

The authorities cited above fully justify the conclusion that the contract of Bennick for the purchase of the land from the State bound the State and Bennick each to the same extent as if it had been made between two private individuals. Bennick had all of the rights that he would have had if the vendor had been a citizen instead of the State. So long as he paid the purchase money and interest the State could not deprive him of the land. He was within the protection of the Constitution. On the other hand, the State by the common law had the right as a vendor upon the failure of Bennick to perform his part of the contract to rescind the sale made to him and resume its control of the land. The contract was purely executory, and the superior title remained in the State the same as it would have remained in the individual under like circumstances.

For the purposes of this case we accept the proposition that between February 19, 1885, and the passage of the Act of April 1, 1887, there was no law in force which empowered the Commissioner of the General Land Office to declare the forfeiture of this class of contracts.

For the authority of the Commissioner of the General Land Office to declare a forfeiture of Bennick's contract of purchase because of his failure to pay the interest, we must look to the eleventh section of "An Act to provide for the sale of lands heretofore or hereafter surveyed and set apart for the benefit of the public free schools," etc., approved April 1, 1887. That section, so far as it affects this question, is in the following words: "If upon the first day of August of any year the interest due on any obligation remains unpaid, the Commissioner of the General Land Office shall indorse on such obligation 'land forfeited' and shall cause an entry to that effect to be made on the account kept with the purchaser, and thereupon said land shall be forfeited to the State with-

out the necessity of re-entry or judicial ascertainment, and shall revert to the particular fund to which it originally belonged and be resold under the provisions of this act or any future law."

The words "any obligation" are of common use and must be taken according to their natural, plain, and ordinary signification, unless some reason appears why a different meaning should be attributed to them. The language used would certainly include all obligations of that class which were then in the hands of the Commissioner of the General Land Office or might thereafter come to his hands in the discharge of his duties imposed by that act. It is claimed that the language of this section as well as of other portions of the act indicate that it was to have prospective operation, and that therefore it can not be construed to embrace antecedent contracts.

In the case of Johnson v. Taylor, 60 Texas, 363, the plaintiff sought to have the court correct a certificate of acknowledgment made by a married woman at a time anterior to the adoption of the Revised Statutes in 1879. That proceeding was authorized alone by article 4353, which reads as follows: "Where the acknowledgment or proof of the execution of any instrument in writing may be properly made, but defectively certified, any party interested may have an action in the District Court to obtain a judgment correcting the certificate." It was objected in that case that the statute was prospective in its operation, and therefore could not embrace contracts made prior to its passage, but the Supreme Court disposed of the objection in the following language: "The statute upon which this action is based is broad in its language, and will apply as well to deeds and other instruments properly executed and acknowledged by married women, but defectively certified, as to like instruments executed by other persons. It makes no exception of instruments executed by married women and the courts can make none. * * * Statutes are ordinarily to be construed as operating prospectively, and it is not necessary to give the statute in question any other effect in order to bring the cause of action set out in the petition within its operation, although it operates upon a pre-existing cause of action. * * * The act was intended to have a prospective operation, and that it may operate upon causes of action based upon past contracts does not change its character." These quotations present all the argument that is necessary to refute the claim that the statute under consideration ought not to be construed to embrace antecedent contracts. In that case the deed which had been previously executed could not under the law take effect so as to bind a married woman nor to confer any right upon the vendee until the correction should be made in the certificate of acknowledgment. The action of the court which was authorized by the statute gave effect to the deed which was before without effect; yet the court held in that case that the statute should be construed to embrace that class of instruments in the remedy provided thereby.

The Chief Justice of the Court of Civil Appeals urges with much force that section 25 of the act in question furnishes indubitable evi-

dence that the Legislature did not intend that the eleventh section of that act should apply to contracts of this class. . Section 25 reads as follows: "Nothing in this act shall be construed to impair, interfere with, or in any manner affect any lease or sale, or the rights growing out of the same, made under the former laws of the land herein referred to; provided, that any person or persons who have heretofore leased lands from the State at prices fixed by the land board, and whose leases are not yet expired, shall have their rental for the remainder of their unexpired term reduced to the prices charged under this bill for the lease of similar lands."

The language "impair, interfere with, or in manner affect," etc., expresses the purpose of the Legislature to protect the rights of the purchasers of those lands from *impairment* by reason of the enactment of that law, and does not propose to exempt them from the operation of the law in so far as it does not impair their rights. Out of abundance of caution the Legislature undertook to prevent the statute from doing what could not have been done if so intended; the Constitution sufficiently guards vested rights against such legislative encroachments. That the Legislature used the language quoted in the sense stated is shown by the proviso to that section which reduces the price of leases under the former laws to the price fixed by that act, and thereby does in a "manner affect" the contracts of lease made under the former laws of the State. The construction of section 11 of that act by which the Commissioner of the Land Office would be empowered to declare the forfeiture of this contract does not in any manner "impair, interfere with, or affect" it, in the sense in which the Legislature used the words. The purchaser has all of the rights under that contract that he had at the time it was entered into. If he has performed his part of it there is no power in the State that can deprive him of his right to perfect his title by continuing in the performance thereof, and if he has not performed his part of the contract, then his right has lapsed, and the State having never parted with the title to the land can assert its superior right to it the same as any other vendor could do under like circumstances.

But it is said that a construction of section 11 which would give to the Commissioner of the General Land Office the authority to enter a forfeiture as in this case would render the act unconstitutional, because it would be giving to it a retroactive effect by which it would violate the obligation of the contract. A sufficient answer, so far as this case is concerned, to that proposition would be that this contract was entered into when such a law existed and provided for the doing of the very thing that the Commissioner has done, and the repeal of that law could not constitute on the part of the State an obligation that it should not be restored in the future. We prefer, however, to put this decision upon the broader ground and stronger position that where a right exists the Legislature may give a new remedy, provided it does not deprive either

party of a substantial right. Sutherland v. De Leon, 1 Texas, 305; Johnson v. Taylor, 60 Texas, 362.

In the case of Sutherland v. De Leon, cited above, it was claimed that the act of the Legislature in question which gave the right to sue out an attachment upon a cause of action that would not before support that writ was unconstitutional. But our Supreme Court announced the following rule as applicable to that class of cases: "By analogy, retrospection, within the meaning of the Constitution, would be to give a right where none before existed, and by relation back, to give the party the benefit of it; if, however, the right already existed, it would be in the power of the Legislature to devise and provide a remedy."

In treating the same question in the case of Johnson v. Taylor, cited above, Judge Stayton said: "The statute does not attempt to create a right where none before existed, but simply to permit the parties to show, if they can, by the judgment of a court, that which, before the statute was enacted, could only be shown by the certificate of the designated officer. A statute which accomplishes this, and no more, can not be said to operate retrospectively." After giving a number of apt illustrations the learned judge continued: "Looking to the defect in the former law, which made the certificate of an officer before whom an acknowledgment was taken the sole and exclusive evidence of what was done, unless such certificate was attacked for fraud or some other reason deemed sufficient to authorize the setting aside of the deed notwithstanding the certificate was in due form, there can be no doubt that it was the intention of the Legislature to give the remedy now provided by the statute in all cases in which parties thereafter might find it necessary to resort thereto in order to correct or complete the informal act of the officer, when there was no defect in the actual execution and acknowledgment of an instrument, the same having been done in the manner provided by law, and this even though the formal defect in the officer's certificate may be found to exist in an instrument executed and acknowledged prior to the time the act in question was passed."

These authorities show that a remedy may be given although none before existed. Neither the right of the State as a vendor nor the remedy by rescission of the sale was given by the statute of 1887; both existed at common law. The Legislature might have rescinded the contract by an act passed for that purpose or it had the right, as it did, to empower some officer to put in force its remedy. The claim that applying the law of 1887 to antecedent contracts conflicts with the Constitution is unfounded.

It is asserted that under the construction given by this court to section 11 of the Act of 1887 the time for paying the interest is postponed from March 1st to August 1st, and that this is a material change in the terms of the obligation. In this assertion counsel are mistaken. The interest becomes due upon all such contracts at the time stipulated for in the original agreement and the purchaser has the right to pay the interest at the time that it matures, but the State by the Act of 1887

instructed its officer to indulge the purchaser until the first day of August after the interest should become payable. · This indulgence of five months to Bennick did not have the effect to add anything to the burden of his contract. He certainly could not complain of this indulgence on the part of the State.

The word "forfeiture" is inaptly used in the statute. There was no forfeiture, because the purchaser had acquired nothing but *the right to acquire* a title by a compliance with the terms of the contract and a performance of the conditions precedent, which were the payment of the interest and the principal according to the terms expressed in the law and the agreement. When Bennick failed to perform these conditions precedent.to his right to acquire title that right lapsed and the State simply asserted its paramount title, against which there was no claim of right in Bennick or anyone holding under him. This assertion of the paramount title in the State was no more a *"forfeiture"* than it would have been if Bennick had bought the land from an individual who for the same reasons declared a rescission of the sale. It is said that the power conferred upon the Commissioner of the Land Office is judicial, but in our opinion the act is no more judicial when performed by the Commissioner of the General Land Office on behalf of the State than it would be if done by an individual vendor or his agent.

It is claimed on the part of the defendant in error that this court held to the contrary of our present ruling in the case of Berrendo Stock Co. v. McCarty, 85 Texas, 412. We have examined the original record in that case, and find that in an able opinion by Judge Key the Court of Civil Appeals held that the Act of the 19th of February, 1885, did not repeal the Act approved February 16, 1885, so far as it empowered the Commissioner of the. General Land Office to declare a forfeiture of such contracts. Upon writ of error to this court, the only question presented by the record and discussed by this court was the effect of the former act. There is not in the opinion of the Court of Civil Appeals nor in any brief of the attorneys for either party, nor in fact in any part of the original record, a reference to the Act of 1887 as in anywise bearing upon this question. It is inconceivable that the learned judge who wrote the opinion in the case of Berrendo Stock Company v. McCarty would have passed upon a question of so much importance as that now presented to this court without ever mentioning the act if it was being construed by the court at that time. Judge Stayton participated in the decision of Berrendo Stock Co. v. McCarty, and made the statement in Anderson v. Bank, 86 Texas, 618, that the attention of the court was not called to the Act of 1887 in the former case within little more than a year from the time the former opinion was rendered. We do not believe that he was mistaken about the fact. We therefore do not hesitate to say that the decision in the case of Berrendo Stock Company v. McCarty is not authority upon the question now presented to this court. We have considered this case upon the assumption that the decision in Berrendo Stock Co. v. McCarty is correct, but should the

same question hereafter arise, this opinion will not be considered as approving that case.

We conclude that the eleventh section of the Act of 1887, above referred to, was intended by the legislature to, and properly construed did, empower the Commissioner of the General Land Office to rescind the sales made of the free school lands in case the purchasers fail to comply with the terms of the purchase, whether the sale was made before or after the enactment of the law, and that the eleventh section of the act is not subject to the objection that it violates the Constitution in any particular. The Court of Civil Appeals erred in reversing the judgment of the District Court and rendering judgment for defendants in error. It is therefore ordered, that the judgment of the Court of Civil Appeals be reversed and set aside and that the judgment of the District Court be affirmed.

*Judgment of Court of Civil Appeals reversed.*
*Judgment of District Court affirmed.*