## C. H. McCullough v. P. G. Rucker et al.

### Decided December 23, 1908.

**1.—Vendor and Vendee—Default in Payment—Suit to Rescind—Offer to Perform.**

A rescission of an executory contract for the sale of land, for default in the payment of the balance of the purchase money, will be denied the vendor, unless strong countervailing equities exist in his favor, when a part of the purchase money has been paid by the vendee or permanent and valuable improvements have been placed on the land by him or by purchasers under him, and the vendee brings into court after suit filed and offers to pay the balance of the purchase money due, with costs of suit.

**2.—Same—Cases Followed and Discussed.**

The case of Moore v. Giesecke, 76 Texas, 543, followed. Fristoe v. Blum, 92 Texas, 76; Waggoner v. Flack, 92 Texas, 663, and Standifer v. Wilson, 93 Texas, 232, discussed.

**3.—Vendor and Vendee—Specific Performance—Equities of Vendor—Pleading.**

An executory contract for the sale of farm land expressly gave the vendor the right to retain possession of the land until the purchase money was paid in full; in a suit by the vendor for a rescission of the contract, because of the refusal of the vendee to pay the balance of the purchase money, the vendee upon the eve of trial tendered the balance due, and prayed for specific performance of the contract of sale; the vendor answered that after default by the vendee in the payment of the money and an express refusal by him to perform

the contract, he (the vendor) had, at great expense, put the land in cultivation and planted a crop thereon which was then growing. Held, first, that such pleading of his equity by the vendor was sufficient, and the court erred in sustaining an exception to the same; and, secondly, that the vendor's equity was such as required protection by the decree of the court, and that a decree for specific performance of the contract with immediate delivery of possession of the land, together with the crop growing thereon, to vendee, would have been unjust.

**4.—Vendor and Vendee—Rescission—Sale by Vendee—Immaterial Testimony.**

Testimony as to the profit received by a vendee of land upon a sale by him to a third party, is irrelevant and immaterial in a suit by the first vendor to rescind the contract of sale for the nonpayment of the purchase money.

**5.—Same—Same—Broker—Good Faith.**

After a broker, or land agent, had effected a sale of land he acquired from the vendee an interest in the land and assumed a proportionate part of the unpaid purchase money; in a suit by the original owner against the vendee and the broker to rescind the sale because of default in paying the balance of the purchase money, it was not reversible error to permit the broker to testify that he made the sale for the plaintiff in good faith.

**6.—Same—Same—Immaterial Testimony.**

Where, in a suit to rescind an executory contract for the sale of land for default in the payment of the purchase money, the vendee tenders the money in court and asks for specific performance of the contract, testimony that the vendee obtained the money from a party to whom he had bargained and expected to sell the land, was irrelevant and immaterial.

**7.—Same—Same—Pleading—Decree.**

In an action for the rescission of an executory contract for the sale of land the defendant paid into court the balance of the purchase money due the plaintiff, and prayed for general relief; there was a general verdict for the defendants. Held, that under the pleadings the court was authorized to render a decree that the clerk pay over to plaintiff the money tendered by defendant; that the plaintiff take nothing by his suit for rescission; that defendant recover of plaintiff the title and possession of the land, and that plaintiff recover of defendant the costs incurred to the date when the money was deposited in court, and that defendant recover the costs thereafter incurred.

Appeal from the Fifty-seventh Judicial District, Bexar County. Tried below before Hon. A. W. Seeligson.

*Henry E. Vernor,* for appellant.—To escape the result of a rescission of an executory contract legally exercised by the party not in default, the party in default must assert and prove a sufficient and reasonable excuse for his failure, which equity will uphold. Moore v. Giesecke, 76 Texas, 543; State v. Snyder, 18 S. W., 109; McCarty v. Moorer, 50 Texas, 290; McCord v. Hames, 85 S. W., 242; Hamblen v. Folts, 70 Texas, 134.

Where the remedy of rescission is resorted to, based on the vendee's failure and refusal to comply with the terms of sale, in the absence of manifest injustice, the vendor is not required to offer back the amount vendee has paid. Herman v. Gieseke, 33 S. W., 1009; First Nat. Bank v. Jackson, 40 S. W., 834; Crouch v. Johnson, 27 S. W., 9; White v. Cole, 29 S. W., 1150.

A tender of the amount called for in the note comes too late after rescission legally exercised and due notice given and the absolute re-

fusal of defendants to pay same, declaring that the demand of plaintiff for attorney fees made its payment by them prohibitory. And thereafter the sole remedy of defendants against plaintiff was one for damages, by reason of his having adopted rescission as his remedy. Calicote v. Spencer, 25 Texas Sup., 149.

The trial court erred in allowing the defendant Josey to testify as to "good faith" and the conclusions of the witness, instead of requiring him to state the facts upon which said conclusion was based as to whether he acted in good faith or no as plaintiff's agent in making the sale specified. Defendant Josey had acted as broker for plaintiff in making the sale to Rucker and Oppenheimer. Afterwards he took a deed from them for one-third interest and contracted to assume to pay one-third of the purchase money. While on the stand he was asked if the sale was made by him in "good faith." The objection was made and overruled that his affirmative answer was purely an expression of opinion.

The trial court erred in allowing the defendants Josey, Rucker and Oppenheimer to testify as to what was designated as a financial panic coming upon the country, and allowing the witness Bennet to testify as to the rules of those banks in the Clearing House Association, during said alleged panic, without showing that said defendants were, by reason of said panic and rules of the banks associated, prevented from complying with their contract to pay plaintiff the amount of the note when due. Lanier v. Faust, 16 S. W., 994.

*W. G. McFarland, S. C. Eldredge* and *Don A. Bliss,* for appellees.— A court of equity will not permit a vendor in an executory contract to disaffirm it for nonpayment of purchase-money notes when the vendee is willing to complete payment and the vendee has already received part of the purchase money. Terrill v. Dewitt, 20 Texas, 257; Thomas v. Beaton, 25 Texas Sup., 318; State v. Snyder, 66 Texas, 698; Walker v. Emerson, 20 Texas, 711; Hamblen v. Folts, 70 Texas, 132; Hild v. Linne, 45 Texas, 476.

JAMES, Chief Justice.—The plaintiff (appellant) filed petition against P. G. Rucker, J. Oppenheimer and N. L. Josey, alleging that on or about March 1, 1907, he, joined by his wife, entered into an executory contract with Rucker and Oppenheimer to sell and convey them certain land, in consideration of $1,500 cash then paid and $9,505 to be paid on November 1, 1907, provided plaintiff was to retain possession of the land until said latter sum was paid, for the payment of which sum a vendor's lien note was taken therefor, and plaintiff was to convey the land upon said terms and conditions. That in pursuance of said contract plaintiff and his wife executed a deed retaining the vendor's lien and stipulating that the defendant's right and title should be subordinate to plaintiff's superior title and should become absolute only when said contract should be fully performed by defendants.

That when said note became due plaintiff promptly had it presented to Rucker and to Oppenheimer for payment, which was refused, and both failed to comply with the terms of said executory contract. That since said note became due plaintiff has used every reasonable endeavor

to induce defendants to pay same or to execute a release to plaintiff from said recorded deed, to no· avail, defendants failing and declining to do either, whereupon prior to January 1, 1908, plaintiff notified them, from and after said date, they being then still in default, plaintiff would resume full title to said land and assert his superior title thereto.

That said vendees, when they entered into the contract, did not expect or intend to pay for said land from any other source than from the resale of same by them, and in fact the contract was entered into and made with that end only in view, and therefore it amounted to an option only, which was to and did terminate and cease on November 1, 1907.

That plaintiff proffers the note for cancellation, and now offers, as he has often before offered, to release defendants therefrom. That the registration of said deed, and defendants' refusal to release to him the land, create a cloud upon his title which he prays to be removed by the judgment of the court, and the same otherwise damages plaintiff in the sum of $2,000, which by reason of the premises defendants have become liable to pay plaintiff. That N. L. Josey claims some interest in the property through Rucker and Oppenheimer. The prayer is for the damages and costs, for the removal of the cloud upon his title, and general relief.

Defendants excepted to the petition for want of equity, and because it did not tender back the $1,500, and pleaded the making of the deed, retaining the vendor's lien and the note, and that prior to November 1, 1907, a severe financial panic came upon the country which rendered it impossible to procure any money except the sum of $3,000 which defendants offered to pay to plaintiff, but he refused to accept anything but full payment. The said panic was so severe that none of the banks would pay on deposits except an amount not exceeding $50 in any one day, whereby defendants were rendered unable to pay all of said money, all of which facts were well known to plaintiff.

That on April 28, 1908, plaintiff being absent, defendants tendered to Henry E. Vernor, Esq. (who had the note for plaintiff), the full amount of said note, including principal, interest to that date, and attorney's fee, and the costs of court incurred in this cause. That Mr. Vernor had authority to collect said note, and defendants had no notice whatever of any revocation of such authority until they made said tender to him, when they were informed by him that he had no authority to accept payment of the note and that he was employed by plaintiff to simply bring a suit to remove cloud from his title. That defendants now offer to make payment in full as aforesaid, and that it would be inequitable and unjust to allow plaintiff, under the circumstances detailed, to have a rescission of the contract; and they further allege that plaintiff has never suffered any damage or injury by reason of the default of defendants, but on the contrary has had possession and use of the land as well as of the cash payment made by defendants.

To the answer plaintiff filed his supplemental petition containing exceptions (which were overruled), and containing a general denial, and a special denial that the panic had anything to do with the default, and alleges that defendants entered into the contract depending solely upon the enhancement in value of the property and their ability to dispose of

the same, in order to meet the note, they being land brokers and specu-
lators by calling, and were without other resources than property bought
for speculation; that the property has, since the default, greatly en-
hanced in value, and defendants are attempting to sell it at an advance
of several thousand dollars to or through Judge Don A. Bliss and Mr.
Light, who plaintiff alleges made the tender alleged by defendants, who
stated that they were furnishing the money represented by the tender, it
being a part of the price they were going to pay defendants for their
equity, if the latter should be adjudged to have any.

That after the default defendants came to Mr. Vernor, who then had
the note for settlement and adjustment, and informed him that they
were unable to pay the balance, and in no event would pay the at-
torney's fee stipulated in the note, whereupon they were informed by
him that unless the note was discharged in full by January 1, 1908, he
would institute a suit for the land to clear the title thereto, and the sale
would then be rescinded by McCullough, whereupon they besought him
to delay the suit for a short time and proposed that they would reconvey
the land on condition that they be given an option on the land for six
months from January 1, 1908, and all this plaintiff was willing to do,
but upon the preparation of papers to this end, defendants refused to
execute them and told Mr. Vernor to go ahead with the suit. That the
offer to pay at this time comes too late.

That after January 1, 1908, plaintiff, with the knowledge of defend-
ants, cleared the land for cultivation and planted a crop at great ex-
pense, without which it would be dead property, and plaintiff could not
now yield possession without great loss, to wit, the sum of $2,000; and
by a trial amendment this matter was more specifically entered into.
The verdict and decree were for defendants.

The assignments from one to five complain of the overruling of the
many special exceptions to the answer. The propositions are, that after
a rescission by the vendor who is not in default, the vendee who is in
default must plead and prove a sufficient excuse in equity for his failure
to perform; also, in such a case, the vendor is not required to offer back
the amount the vendee has paid, in the absence of manifest injustice;
also, that the excuse must not only be pleaded, but it must be a sufficient
reason and complete in itself; and the plea fails to show when the panic
referred to was relieved, and but for it they were ready, willing and
able to pay plaintiff before January 1, 1908.

The sixth assignment complains of the overruling of a special excep-
tion to that part of the answer alleging a tender to Henry E. Vernor,
for the reasons that it was not a tender to plaintiff, and, if otherwise
proper and legal, it came too late, being after the filing of the suit and
after answer, and after plaintiff had rescinded the sale; and also for the
reason that it came too late, coming after plaintiff had given notice of
the rescission and after defendants had absolutely refused to pay the
note, declaring that the addition of attorney's fees made its payment by
them prohibitory, and thereafter the sole remedy, if any, of defendants
against plaintiff, was one for damages by reason of his having adopted
rescission as his remedy.

The seventh assignment relates likewise to an overruled exception,
and appellant under it makes this proposition: "If the right of rescis-

sion was improperly exercised, or was unjust and inequitable, the facts rendering it such must be stated in defendants' plea."

According to the views entertained by us, the fact that defendants in the course of the proceeding tendered the amount of the note with interest, attorney's fee and costs, was sufficient of itself to defeat the relief prayed for by plaintiff, and renders the above propositions immaterial.

The uncertainty that existed in the cases prior to the opinion in Moore v. Giesecke, 76 Texas, 543, the Supreme Court undertook to relieve by reviewing a number of the prior opinions and declaring the rules on this subject as deduced therefrom. In the first place, we understand from it that it is immaterial, so far as the vendee's right to set up or avail himself of equities is concerned, whether the proceeding be an action at law by the vendor to recover the land, or in the form of a suit in equity, such as it is here. Also, as stated in said opinion, that "when a suit for the recovery back of the land has been brought, where any portion of the purchase money has been paid, or where valuable and permanent improvements have been placed on the land by the vendee or by purchasers under him, and the defendant when sued brings into court and offers to pay the balance of the purchase money, with costs of suit, unless there exist strong countervailing equities, the money ought to be received and a recovery of the land denied." Inasmuch as defendants brought the money into court, the above rule comes directly into application, and the other rules announced in said opinion as applying where the vendee does not seek to perform are not involved. See also White v. Cole, 9 Texas Civ. App., 277.

The principles as announced in Moore v. Giesecke have not been changed by any subsequent cases, unless what was decided in Fristoe v. Blum, 92 Texas, 76; Waggoner v. Flack, 92 Texas, 633, and Standifer v. Wilson, 93 Texas, 232, is construed to have that effect. Although there are expressions to be found in said opinions which look that way, it is not believed that the Supreme Court intended by them to overrule what had been held in Moore v. Giesecke and other cases. It is not reasonable to suppose that it would have abrogated so important a decision, one in which that court carefully reviewed the seemingly conflicting cases and undertook to deduce and declare what were the true rules for the guidance of the profession thereafter, without some reference to these cases.

The eighth assignment complains of the sustaining of this special exception:

They (defendants) "except to so much of said supplemental petition as alleges that he (plaintiff) has incurred great expense and has been damaged in a large amount, because it is nowhere alleged what the particulars of said expenses are nor how incurred, nor the amount thereof, nor to whom paid, whereof these defendants are not notified as to what they have to meet, so that they can be prepared with their proof."

The ninth and tenth are that the court erred when the evidence was being taken, in then holding that the above special exception applied to the whole of paragraph 7 of the supplemental petition instead of to only a portion of it.

The above and succeeding assignments, Nos. 11, 12, 13, 14 and 16,

all proceed upon the idea that plaintiff had the right to prove, as a countervailing equity, the fact that after January 1, 1908, he, "with defendants' knowledge, had the land broken up and planted in appropriate crops which are now growing," and the expense he had incurred in respect thereto. The evident purpose of such pleading and proof was to show that plaintiff could not surrender the property at that time and under those circumstances without a great loss. The trial took place early in May, 1908. The supplemental petition in which said paragraph 7 occurred, which stated that the crops were then growing, was filed just previous to the trial.

The court erred in sustaining the exception mentioned in the eighth assignment and in striking out the seventh paragraph of the supplemental petition. We think it was necessary for plaintiff to plead any countervailing equity he had, but we think also that the said paragraph was a sufficient pleading of an equity. It alleged that plaintiff had, at great expense, planted crops on the land which were then growing. It was alleged, and is not denied, that plaintiff had, under the contract, the right of possession of the land until defendants performed what the contract required of them, which right would include the use of the property. This was a farm, and until defendants complied with the contract plaintiff was entitled to use it as such. Accordingly he ploughed and planted crops after defendants had defaulted and after they had announced that they were not able to pay the note according to its terms. Plaintiff may be said to have filed this suit with every reasonable expectation that defendants would not comply, and that he would obtain the relief prayed for in this proceeding. Now, before the crops thus planted had matured, defendants came in with the money. A decree for defendants, at that time, for the land, would have had the effect of giving them the crops thereon. We think this result would have been manifestly unjust under the circumstances. We do not mean to say that the facts pleaded by plaintiff in said paragraph 7 should have had the effect of absolutely defeating defendants' right to the land upon payment of the balance of the purchase price of the land, but that plaintiff was entitled to have himself, by the decree, protected in some way against loss in respect to the crops that were then growing on the land, and against defendants reaping the benefit of the expense he had incurred in respect thereto.

The allegations in said paragraph 7, viz.: That since January 1st he has had the land broken up and planted in appropriate crops, which are now growing, at great cost and expense to plaintiff, were a sufficient pleading of the matter. The items of the expense were not essential to such plea; and, besides, plaintiff did not have to plead his evidence. The court erred in sustaining the exception, and in striking out the paragraph, and in refusing to admit evidence in support of it.

It appears that, after the court had so ruled, plaintiff filed a trial amendment setting forth the items of expense. Defendants then claimed surprise, and asked for a postponement or continuance, which the court was about to allow, when plaintiff withdrew the trial amendment, and undertook afterwards to introduce the evidence upon the ground that he was entitled to do so for the reason that defendants had pleaded that "plaintiff has never suffered any damage or injury whatever by reason

of defendants' failure to pay said note when the same fell due," and that this sufficiently raised the issue. We are not prepared to say that this view is correct as a matter of pleading. (Mullen v. Mutual Life Ins. Co., 89 Texas, 259.) But we do hold that paragraph 7 ought not to have been stricken out, and that, regardless of the items of expense, the plea was sufficient.

It may, however, not be necessary to reverse the judgment for this ruling. It is clear that plaintiff has remained in possession of the land, and, as a matter of common knowledge, we know that the time has now passed for the maturing and gathering of the crops, and that plaintiff has received the benefit of them, if any. But it might be contended hereafter that, upon the decree as rendered, defendants were entitled to the land in the condition it was at that time, and that this entitled them to the crops. A modification of the decree, so as to deprive defendants of the right to demand anything of plaintiff in respect to the said crops, would render the errors complained of by said assignments harmless. Also the errors, if any, complained of by the various other assignments of error, to wit: Nos. 11, 12, 13, 14, 15, 16, 19 and 32.

The seventeenth and eighteenth complain of the exclusion of testimony as to the amounts defendants had received as the result of a contract by them to sell the land to Bruce Waring. The testimony was immaterial.

The twentieth, twenty-first, twenty-second and twenty-third assignments relate to the exclusion of testimony which was to the effect that the money tendered into court was the money of Mr. Light, furnished him by Mrs. Gunter as part of the price they had agreed to pay defendants for the land in case they were successful in this suit. This was likewise immaterial testimony.

From the twenty-fourth assignment and the statement in the brief thereunder no error is indicated.

The twenty-fifth, twenty-sixth and twenty-seventh assignments relate to testimony concerning the financial panic. Under the opinion we have expressed under the first seven assignments, that matter was unimportant and immaterial, in view of the actual bringing of the money into court. So also of the testimony which assignments 28, 29, 30 and 31 refer to.

The sole proposition in appellants' brief, in connection with the thirty-third assignment, is that under the verdict the decree should have been that plaintiff take nothing by his suit, and that defendants go hence and recover their costs. We find that the decree was that plaintiff take nothing by his suit, and that defendants go hence without day. Therefore the objection to the decree must have reference to those portions which adjudicate that, the money having been paid into court and the costs tendered to May 2, the money deposited should be paid by the clerk to plaintiff, and defendants should have and recover of plaintiff the land with writ of possession, and that plaintiff recover of defendants all costs up to May 2, 1908, and defendants recover of plaintiff all costs since that date, with execution for such costs respectively. The pleading of defendants, and the payment and tender, and the prayer for general relief, warranted the court in making other dispositions by the decree than merely to adjudge generally that plaintiff take nothing. This is

sufficient to dispose of plaintiff's proposition, and we can consider nothing more than what is embodied in the proposition.

The thirty-fourth assignment complains of the charge. The charge submitted the case in these words:

"Hence you are instructed that if you believe from all the facts and circumstances that have been presented to you in evidence that the plaintiff, C. H. McCullough, should be allowed to remove the cloud from the title; that is, that he should be allowed to cancel the deed heretofore given by him to the defendants conveying the property involved in this suit, then you are instructed to return a verdict for the plaintiff. If, however, you believe from all the facts and circumstances that have been presented to you in evidence that the plaintiff, C. H. McCullough, should be compelled to receive the principal, interest and attorney's fees on the note that Rucker and Oppenheimer executed to him, which money has been tendered into court, then you are instructed to return a verdict for the defendants."

We shall not comment on this instruction, because we are of opinion that, under the pleadings and testimony, no other verdict should have been rendered than one recognizing defendants' right to complete the sale. The essential facts concerning the sale, the terms thereof, the cash payment, the default, the notice that plaintiff would declare a rescission on January 1, 1908, and the further default, the institution of this equitable proceeding by plaintiff to effectuate the rescission, and the payment and tender during the suit, are undisputed. Upon these facts, plaintiff's forfeiture or rescission must have failed, unless there was developed some substantial countervailing equity that had arisen in the meantime which would, in justice to plaintiff, require the rescission to be upheld. The only equity of that description has been discussed, but we think it was of that nature that plaintiff could have been relieved in respect thereto without denying defendants the right to consummate the sale.

These views necessitate the overruling of the several assignments which concern special charges asked by plaintiff, to wit, the 35th, 36th, 37th, 38th, 39th, 40th and 41st, and also the 42d, which complains of the charge; also the 44th, which complains of the overruling of the motion for a new trial.

The forty-third assignment states that as the defendants' pleadings contained "no prayer for affirmative relief, but simply that judgment be rendered in their favor upon the payment of the amount of the note and costs of court, and for general relief, the court erred in awarding defendants a decree for possession and a writ therefor, instead of simply to the effect that plaintiff take nothing by the suit and defendants go hence without day." This proposition is not sustainable, particularly in view of the prayer for general relief. (Voightlander v. Brotze, 59 Texas, 286.)

The conclusion we come to is, that for the error indicated the judgment should be reversed and the cause remanded, unless defendants consent that it may be modified by this court so as to give plaintiff full protection and immunity by giving to plaintiff the crops that were on the land when the tender was made. If such consent is indicated

within five days the judgment will be reformed and affirmed, otherwise reversed and the cause remanded.

*Reformed and affirmed.*