**TEXAS DEPARTMENT OF HEALTH and Texas Department of Human Services, Appellants,**

v.

**TEXAS HEALTH ENTERPRISES, INC., Appellee.**

No. 05–92–01322–CV.

Court of Appeals of Texas, Dallas.

Dec. 10, 1993.

Debra H. Green, Austin, for appellants.

Lewis LeClair, Dan S. Boyd and Kristine D. Horn, Dallas, for appellee.

Before THOMAS, CHAPMAN and ROSENBERG, JJ.

## OPINION

ROSENBERG, Justice.

The Texas Department of Health (TDH) and the Texas Department of Human Services (Human Services) appeal the trial court's summary judgment granted to Texas Health Enterprises, Inc. (the nursing home). Appellants,[1] in three points of error, contend that summary judgment is improper because the trial court lacked jurisdiction, rendered an advisory opinion, and did not require the nursing home to exhaust its administrative remedies. We conclude that the trial court properly exercised jurisdiction over this cause. In point of error four, appellants complain that the trial court erred in declaring that Human Services is prohibited from withholding Medicaid vendor payments pending the exhaustion of the nursing home's administrative appeal. We conclude that Human Services did not have the statutory or contractual authority to withhold contract payments pending an administrative challenge. We overrule appellants' points of error. We affirm the trial court's judgment.

The nursing home entered into a Medicaid vendor contract with Human Services, the administrator of the State's medical assistance program. TDH, the contract compliance review agency, revoked the nursing home's Medicaid certification after several on-site inspections. TDH decertified the nursing home subject to an informal pretermination review and a full post-termination due process review. TDH notified Human Services that the nursing home was no longer a qualified Medicaid health-care provider. During the appeals process, Human Services canceled its Medicaid vendor contract with the nursing home. The nursing home sought to enjoin Human Services from suspending Medicaid vendor payments during the pendency of its administrative appeal.

In seeking injunctive relief, the nursing home challenged neither the rulemaking nor the enforcement authority of appellants. The nursing home urged that Human Services violated its own regulations prohibiting the withholding of Medicaid vendor payments during the pendency of an administrative appeal. The nursing home sought declaratory relief to prevent the wrongful acts of appellants. The nursing home moved for summary judgment. Appellants did not file a response to the summary judgment motion. The trial court granted summary judgment to the nursing home. Appellants filed a motion for new trial. The trial court denied the motion for new trial. TDH and Human Services now appeal.

■ The standards of review of the trial court's grant of a summary judgment are well known. Summary judgment is proper only if the record shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Rodriguez v. Naylor Indus., Inc.,* 763 S.W.2d 411, 413 (Tex.1989). The rule provides a method for summarily ending a case that involves only a question of law and no genuine material fact issue. *See Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557, 563 (1962).

■ In reviewing a summary judgment record, we apply the following standards: (1) the movant for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, we must take evidence favorable to the nonmovant as true; and (3) we indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

---

1. TDH and Human Services will be referred to collectively as appellants except as is necessary to designate them separately.

Here, the facts are not in dispute. Accordingly, this is a proper case for a summary judgment. *See Gaines,* 358 S.W.2d at 563. This case involves a pure question of law: Whether Human Services may withhold Medicaid vendor payments from the nursing home pending the exhaustion of the administrative appeals process challenging either the nursing home's decertification or the cancellation of its Medicaid contract.

Human Services administers the federally funded Medicaid program, and TDH certifies health-care facilities as qualified Medicaid providers. *See* TEX.HUM.RES.CODE ANN. §§ 32.001–.040 (Vernon 1990 & Supp.1993) (the State's medical assistance statute). Human Services has the authority to prescribe rules governing the Medicaid program to insure that the needy citizens of this State receive all benefits authorized under the federal program.[2] *See* TEX.HUM.RES.CODE ANN. §§ 22.002, 32.001–.040 (Vernon 1990 & Supp. 1993). Appellants jointly promulgated quality standards to apply to nursing homes in Texas for licensure and Medicaid certification.[3]

To insure compliance with certification requirements, TDH conducts periodic visits and yearly inspections of the health-care institutions participating in Medicaid. When a facility does not meet the standards for certification, TDH notifies Human Services of the cited deficiencies. *See* 40 TEX.ADMIN.CODE § 19.2012 (West Supp.1993). Human Services assesses certain penalties, during which time the nursing home has the opportunity to cure the deficiencies. Human Services, based on the severity and scope of the deficiencies, imposes liquidated damages per certified Medicaid bed for every day the facility is out of compliance. *See* 40 TEX.ADMIN.CODE § 19.2012 (West Supp.1993). Once a facility is cited for deficiencies, TDH continues to conduct unannounced inspections to insure compliance. If a third inspection reveals the same deficiencies within eighteen months of the first notification, Human Services will terminate the provider agreement. *See* 40 TEX.ADMIN.CODE § 19.2012(b)(2)(C) (West Supp.1993).

If a facility's violations are severe, TDH may immediately revoke the provider's certification. When TDH decertifies a facility, Human Services, subject to the appellate rights of the provider, cancels the facility provider agreement. *See* 40 TEX.ADMIN.CODE § 19.2012(b)(1)(F) (West Supp. 1993). When the contract is terminated, either through decertification or because of continuing deficiencies, Human Services may suspend vendor payments pending the outcome of the administrative appeal.

The Texas Legislature expressly granted Human Services the statutory authority to cancel a provider's Medicaid contract *after* reasonable notice and an opportunity for a hearing. TEX.HUM.RES.CODE ANN. § 32.-034(a) (Vernon Supp.1993). Although Human Services may not terminate a contract prior to this hearing, it may withhold payments *if* the contract grants it the authority to do so. TEX.HUM.RES.CODE ANN. § 32.-034(b) (Vernon 1990).[4]

Appellants, in point of error four, contend that the unambiguous language of the contract grants Human Services the authority to temporarily withhold vendor payments until final resolution of the matter. Accordingly, our initial inquiry begins with the Medicaid

---

**2.** Under this authority, Human Services has adopted extensive rules governing its Medicaid Program, which are codified in Title 40 of the Texas Administrative Code. *See* 40 TEX.ADMIN.CODE §§ 1.1–1.1.9, 4.1–5.2004, 15.1–15.725, 19.1–19.2107 (West 1990 & Supp.1993). Human Services also issues policy statements, which are viewed as rules under the Administrative Procedure and Texas Register Act (APTRA). *See* TEX. REV.CIV.STAT.ANN. art. 6252–13a (Vernon Supp. 1993); *see also Texas Dep't of Human Servs. v. Christian Care Ctrs.,* 826 S.W.2d 715, 717 (Tex. App.—Austin 1992, writ denied).

**3.** These standards were adopted under chapter 242 of the Health and Safety Code. *See* 40 TEX.ADMIN.CODE § 19.1 (West Supp.1993).

**4.** Section 32.034(b) provides "[Human Services] may not terminate a contract during the pendency of a hearing under this section. [Human Services] may withhold payments during the pendency of a hearing, but the department shall pay the withheld payments and resume contract payments if the final determination is favorable to the contractor. [Human Services]'s authority to withhold payments shall be established by contract." TEX.HUM.RES.CODE ANN. § 32.034(b) (Vernon 1990).

provider agreement to determine whether it allows Human Services to withhold vendor payments pending the outcome of the nursing home's administrative appeal.

When reviewing a contract, if the language is plain, we enforce it as written. *Republic Nat'l Life Ins. Co. v. Spillars*, 368 S.W.2d 92, 94 (Tex.1963). We accord language in a contract its plain, grammatical meaning unless the parties definitely intended otherwise. *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex.1985).

Under the Medicaid provider agreement, Human Services agreed to pay the nursing home for providing services to Medicaid qualified residents and patients. The contract provides:

### I.

[Human Services] and the [nursing home] mutually agree to the terms and conditions set forth below and to the provisions of the Long Term Care Nursing Facility Requirements for Licensure and Certification published by [Human Services]. . . .

### III.

[Human Services] agrees:

. . . . .

D. To give to the [nursing home] reasonable notice of any impending change in its status as a participating nursing facility in the Texas Medical Assistance Program, except that nothing in this section shall be construed to deny [Human Services] the right, for failure to comply with the Long Term Care Nursing Facility Requirements for Licensure and Certification published by the Department, the contract or regulations published in the *Texas Register*, to take any one or more of the following actions: (1) cancel the contract, (2) suspend vendor payments, or (3) any other legal remedy available to [Human Services];

E. To provide a hearing to the [nursing home] in the event [Human Services] suspends or cancels the [nursing home]'s par-

ticipation in the Title XIX Medical Assistance Program;

. . . . .

### IV.

[Human Services] and the [nursing home] mutually agree:

. . . . .

B. That [Human Services] may withhold payments, in whole or in part, if necessary because of irregularity(ies) or difference(s) from whatever cause until such irregularity(ies) or difference(s) can be adjusted;

C. . . . Nothing in this section shall be construed to forbid [Human Services] from terminating this contract when it is established that the [nursing home] is failing to comply with the terms of this contract, and the Long Term Care Nursing Facility Requirements for Licensure and Certification, as they now read or as they may be amended;

First, appellants assert that article III, section D of the contract specifically reserves the right to suspend vendor payments pending the outcome of the administrative hearing. Article III, section D, however, is not an affirmative grant of authority to withhold vendor payments during the pendency of an administrative appeal. Rather, the contractual language merely indicates that nothing in this section of the provider agreement precludes the taking of such actions, so long as the remedy is provided elsewhere. Article III, section D does not authorize Human Services to suspend vendor payments prior to completion of the administrative appeals hearing.

Second, appellants assert that article IV, section B of the contract grants Human Services the authority to withhold vendor payments for failure to comply with either the contract or the regulations published in the *Texas Register*. Article IV, section B authorizes Human Services to temporarily withhold vendor payments if necessary until "irregularity(ies) or difference(s) can be adjusted." We cannot agree with appellants that violations of the health and safety standards are irregularities or differences to be adjusted. There is nothing irregular or dif-

ferent about a nursing home's failure to meet minimum care standards.

Article III, section C explains that Human Services will make proper adjustments in vendor payments from month to month to compensate for prior overpayment or underpayment. An irregularity or difference may exist regarding billing or filing procedures. However, noncompliance with certification standards that impairs the health and safety of residents cannot be characterized as an irregularity or difference to be adjusted. *Cf. Texas Dep't of Human Servs. v. ARA Living Ctrs. of Tex., Inc.*, 833 S.W.2d 689, 696 (Tex. App.—Austin 1992, writ denied) (article IV, section B does not permit the permanent withholding of vendor payments). Article IV, section B provides no support for suspending vendor payments (as a penalty for failing to comply with health and safety standards) *pending* the outcome of the administrative appeals hearing.

■ Third, appellants assert that the provisions of the Long Term Care Nursing Facility Requirements for Licensure and Certification, which were specifically incorporated as a part of the contract, represent an affirmative grant of authority to withhold vendor payments during the pendency of an administrative appeal challenging the facility's decertification or cancellation of its Medicaid contract. The unambiguous language of the contract incorporates the terms and conditions of section 19.2012. *See* 40 TEX.ADMIN.CODE § 19.2012 (West Supp.1993) (entitled "Remedies for Violations of Title XIX Nursing Facility Provider Agreements"). The determinative issue here is whether section 19.2012 specifically grants Human Services the authority to withhold vendor payments *pending an administrative appeal*

when TDH terminates a facility's Medicaid certification.

Section 19.2012(b) sets forth the remedies Human Services may employ for violations of the minimum standards for nursing home care. Human Services may cancel the provider agreement and make no payment for services provided by the facility after the *effective date* of the termination of the facility's certification when the provider's violations have been (1) so serious as to impair the health and safety of residents, or (2) so numerous and repeated that the facility cannot meet the minimum care standards. *See* 40 TEX.ADMIN.CODE § 19.2012(b)(1)(F), 19.-2012(b)(2)(C), (E) (West Supp.1993).

If the provider requests an appeals hearing, the decertification does not become *effective* until a "termination of certification" hearing is conducted pursuant to section 79.-1605(a). *See* 40 TEX.ADMIN.CODE § 79.-1605(a) (West Supp.1993). Likewise, Human Services may not cancel a contract during the pendency of this appeals hearing. TEX. HUM.RES.CODE ANN. § 32.034(b) (Vernon 1990). However, if the administrative law judge sustains the cancellation by Human Services, the effective date of the cancellation is the date specified in the notice of contract cancellation.[5] *See* 40 TEX.ADMIN.CODE § 19.-2012(b)(2)(E) (West Supp.1993). Although the effective date relates back to the date specified in the notice of contract cancellation, subsection 19.2012(b)(2)(E) does not grant Human Services the authority to withhold vendor payments during the pendency of the hearing.

■ We can discern no provision that affirmatively grants Human Services the authority to withhold vendor payments *prior* to the outcome of an administrative appeal challenging an adverse action by TDH or Human Services.[6] Nothing in the Long Term Care

---

**5.** Subsection 19.2012(b)(2)(E) provides, in pertinent part, that "[i]f the [nursing home] appeals an adverse action by [Human Services] and the adverse action is sustained by an administrative law judge or judicial proceeding, the effective date of the provider agreement cancellation is the date specified in the notice of contract cancellation. Unless otherwise provided in this section, [Human Services] makes no payment for services provided by the facility after the effective date of the facility's provider agreement termi-

nation." 40 TEX.ADMIN.CODE § 19.2012(b)(2)(E) (West Supp.1993).

**6.** The nursing home argues that section 19.-2012(e)(1) specifically prohibits Human Services from withholding vendor payments as a remedy for alleged health and safety violations by a provider. 40 TEX.ADMIN.CODE § 19.2012(e)(1) (West Supp.1993). We disagree. Such an interpretation is inconsistent with the State's medical assistance statute. *See* TEX.HUM.RES.CODE ANN. § 32.-034(b) (Vernon 1990). Human Services may

Nursing Facility Requirements for Licensure and Certification grants Human Services the affirmative right to withhold vendor payments during the pendency of an appeals hearing. Accordingly, we conclude that the plain language of the contract does not grant Human Services the authority to withhold vendor payments pending an administrative appeal.

Appellants next contend that contractual authority to withhold vendor payments pursuant to section 32.034(b) is not required when a facility loses its Medicaid certification. Appellants explain that Human Services, with or without contractual authority to do so, must immediately stop vendor payments to a *decertified* facility because federal regulations require certification for participation in Medicaid. Human Services relies on subsection (c) of section 32.034 for statutory authority to withhold vendor payments from a *decertified* facility pending the outcome of an administrative appeal. Section 32.034(c) provides:

(c) The section does not apply if a contract is canceled because federal matching funds for contract payments are no longer available or if the contract expires according to its terms.

TEX.HUM.RES.CODE ANN. § 32.034(c) (Vernon 1990). Appellants assert that subsection (c) is operative where federal financial participation is not available because the facility is no longer certified to participate in Medicaid. Therefore, the statute's requirement of contractual authority to withhold vendor payments is not applicable. We disagree.

Appellants argue that because matching funds are no longer available when a facility is decertified, decertification is sufficient to invoke subsection (c) and release Human Services from its statutory mandate to establish a *contractual* right to withhold vendor payments. *See* TEX.HUM.RES.CODE ANN. § 32.034(b) (Vernon 1990). This interpretation of section 32.034 would allow Human Services to do something it is specifical-

ly prohibited from doing—cancel the contract and withhold payments without prior notice to the nursing home of its right to suspend payments pending an administrative appeal.

The legislature did not draft subsection (c) to render the regulatory framework and due process safeguards created by the statute meaningless. TDH may not simply decertify a facility and release Human Services from the statute's mandate to (1) provide notice and hearing before cancellation of the contract and (2) establish the authority to withhold vendor payments by contract. The purpose of subsection (c) is to allow Human Services to cancel the contract when federal matching funds are no longer available due to the actions of the federal government, not because of the actions of TDH in decertifying a health-care facility.

If the federal government chose to reduce or restructure the Medicaid program, subsection (c) would allow Human Services to cancel the contract and permanently withhold vendor payments without notice and hearing. Subsection (c) is not operable where federal matching funds are no longer available because of the actions of TDH, a state agency. Human Services must act in accordance with its statutory and regulatory mandates. Human Services cannot rely on loosely drafted language in subsection (c) to erase the statute's commands and the entire regulatory scheme of section 19.2012 of Title 40 of the Texas Administrative Code. *See* 40 TEX.AD-MIN.CODE § 19.2012 (West Supp.1993).

Appellants next argue that requiring Human Services to make payments to a decertified facility, that will not be matched by the federal government, violates section 22.002(d) of the Texas Human Resources Code. *See* TEX.HUM.RES.CODE ANN. § 22.002(d) (Vernon 1990). According to appellants, section 22.-002(d) requires the state to receive and expend matching funds to the fullest extent possible; therefore, section 32.034(c) should be read to grant Human Services the authority to withhold vendor payments from a de-

---

withhold payments for violations of the health and safety standards during the pendency of a hearing as long as Human Services has established that right by contract. TEX.HUM.RES.CODE ANN. § 32.034 (Vernon 1990). Section 19.-

2012(e)(1) does not prohibit Human Services from establishing a contractual right to withhold vendor payments for violations of health and safety standards.

certified facility pending the outcome of the administrative appeal. Section 22.002(d) provides, in pertinent part, that

[Human Services] may promulgate policies and rules necessary to allow the state to receive and expend federal matching funds to the fullest extent possible *in accordance with the federal statutes and the provisions of this title and the state constitution and within the limits of appropriated funds.*

TEX.HUM.RES.CODE ANN. § 22.002(d) (Vernon 1990) (emphasis added). The applicable provision of Title 2 of the Texas Human Resources Code, section 32.034, dictates that Texas Human Services establish its right to withhold vendor payments by contract. TEX. HUM.RES.CODE ANN. § 32.034 (Vernon 1990). Section 22.002(d) provides no support for appellants' complaint.

■ Lastly, appellants contend that any benefit section 32.034 may grant the nursing home is preempted by federal law because section 32.034 is inconsistent with federal requirements for participation in the Medicaid program. Appellants argue that the Supremacy Clause, federal law, and Texas participation in Medicaid prohibit Human Services from making payments to a decertified facility. Appellants argue that section 32.002 of the Human Resources Code mandates that where a provision renders the state program out of conformity with federal law to the extent that federal matching money is not available, the conflicting provision shall be inoperable. TEX.HUM.RES.CODE ANN. § 32.-002 (Vernon 1990).[7] Appellants argue that federal regulations prohibit Human Services from making Medicaid payments to a facility that is no longer certified by TDH. *See* 42 C.F.R. §§ 442.12 (1991).

A careful reading of the federal statutes governing Medicaid does not support the contention that federal regulations prohibit Human Services from continuing to make vendor payments prior to the outcome of an administrative appeal challenging a facility's decertification. The federal government will not provide "federal matching dollars" to a health-care facility that no longer meets the Medicaid certification requirements. However, federal regulations do not prohibit Human Services from expending "unmatched" state dollars to a decertified facility. *See* 42 C.F.R. § 442.12, 440.40(c)(2) (1991). A state may choose to expend its own dollars, unmatched by federal dollars, to a decertified provider.

Section 32.034 is not inconsistent with federal requirements for participation in the Medicaid program. Federal regulations grant states a variety of options in administering Medicaid. Section 32.034 does not render any statutory or regulatory provision out of conformity with federal law. The Texas Legislature's choice of requiring Human Services to establish its right to withhold vendor payment by contract does not place Texas in conflict with federal law.

Section 32.034 dictates that Human Services establish its right to withhold vendor payments by contract. Accordingly, when Human Services does not include such a provision in its Medicaid vendor agreement, this Court will not misconstrue provisions of the Human Resources Code to grant Human Services the authority to do that which it is required to establish by individual contract with each participating health-care provider.

The legislature recognized the need to conserve scarce fiscal resources while providing fair administrative procedures for health-care facilities participating in Medicaid. Our decision does not suggest that the State waste limited public funds on a facility that does not comply with minimum care standards. This Court suggests that Human Services follow its statutory mandate: draft a standardized Medicaid provider agreement that includes a provision specifically granting Human Services the authority to withhold vendor payments *prior* to the outcome of the administrative appeal. *See* TEX.HUM.RES. CODE ANN. § 32.034(b) (Vernon 1990).

---

7. Section 32.002 provides, in pertinent part, "[I]f a provision of this chapter conflicts with a provision of the Social Security Act or any other federal act and renders the state program out of conformity with federal law to the extent that federal matching money is not available to the state, the conflicting provision shall be inoperative to the extent of the conflict but shall not affect the remainder of this chapter." TEX.HUM. RES.CODE ANN. § 32.002 (Vernon 1990).

Absent a contractual grant of authority, Human Services has no power under current statutes or regulations to withhold vendor payments. The trial court did not err in ruling that Human Services exceeded its grant of authority by withholding Medicaid vendor payments from the nursing home pending completion of its administrative appeal. We overrule point of error four.

In point of error one, appellants complain that the trial court is without jurisdiction because the action is barred by the doctrine of sovereign immunity.

■ Appellants first assert that the doctrine of sovereign immunity prevents the trial court from exercising inherent jurisdiction over an appeal from an administrative agency's decision unless the Administrative Procedure and Texas Register Act (APTRA) has been followed. Appellants argue that the nursing home did not comply with APTRA's procedural requirements; therefore, the nursing home is barred from bringing suit. The nursing home, however, did not challenge an agency rule or seek relief under APTRA. The nursing home sought declaratory relief pursuant to the Texas Uniform Declaratory Judgments Act.

■ Appellants next assert that the doctrine of sovereign immunity bars suits against the State for declaratory judgment. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 37.001 (Vernon 1991). Appellants argue that the declaratory judgments act is not a waiver by the State of its ordinary immunity from liability. The declaratory judgments act does not confer jurisdiction on the trial court but makes available the remedy of declaratory judgment for a cause of action already within the court's jurisdiction. *Southwestern Bell Telephone Co. v. Public Util. Comm'n,* 735 S.W.2d 663, 667 (Tex.App.—Austin 1987, no writ). Appellants contend that the doctrine of sovereign immunity bars suit against the State unless the State has expressly given its consent to be sued.

■ The nursing home urges that Human Services had no contractual or statutory authority to withhold vendor payments; therefore, declaratory relief was necessary to prevent the wrongful acts of Human Servic-

es. If the State commits an act which by statute it may not do, sovereign immunity is not available. *Bullock v. Marathon Oil Co.,* 798 S.W.2d 353, 361 (Tex.App.—Austin 1990, no writ); *Public Util. Comm'n v. City of Austin,* 728 S.W.2d 907, 911 (Tex.App.—Austin 1987, writ ref'd n.r.e.). Suits challenging an agency's action as being outside the scope of its delegated authority are not suits against the State that require legislative or statutory authority. *Bullock,* 798 S.W.2d at 361; *Public Util. Comm'n,* 728 S.W.2d at 911.

■ Furthermore, the sovereign immunity doctrine does not apply to contracts made by the State or its agencies. *Ferris v. Texas Bd. of Chiropractic Examiners,* 808 S.W.2d 514, 518 (Tex.App.—Austin 1991, writ denied); *Industrial Constr. Management v. Desoto Indep. Sch. Dist.,* 785 S.W.2d 160, 163 (Tex.App.—Dallas 1989, no writ). Sovereign immunity does not stand as a bar to a citizen's right to enforce contractual obligations entered into by the State or any of its agencies. *Ferris,* 808 S.W.2d at 518. There is a distinction between the State as a "sovereign" and the State as a contracting party. By entering into a contract, the State lays aside its attributes as a sovereign and binds itself to the same law as would govern the contracts of an individual under like conditions. *Fristoe v. Blum,* 92 Tex. 76, 45 S.W. 998, 999–1000 (1898). Because the trial court did not lack jurisdiction to decide whether Human Services was committing a wrongful act by withholding Medicaid vendor payments without the contractual authority to do so, we overrule point of error one.

In point of error two, appellants contend that the trial court erred in rendering an advisory opinion. After the trial court entered summary judgment in favor of the nursing home but prior to the court losing its plenary power, TDH and Human Services rescinded their administrative actions against the nursing home. In a motion for new trial, appellants informed the trial court that Human Services and TDH had restored the nursing home's certification and reinstated its contract. Appellants urged the trial court to vacate or reform its judgment. The trial court did not do so. Appellants now contend

that the trial court's decision was not final until the trial court lost its plenary power, and therefore the trial court rendered a purely advisory opinion because a live controversy no longer existed between the parties.

■ The term "final," as applied to judgments, has more than one meaning. *Street v. Honorable Second Ct. of Appeals,* 756 S.W.2d 299, 301 (Tex.1988). The term "final judgment" can be used with reference to when a trial court's power to alter the judgment ends. *Id.* A judgment becomes final for purposes of appellate jurisdiction if it disposes of all issues and parties in a case. The trial court had plenary power over the summary judgment at the time appellants filed their motion for new trial. The trial court could have chosen to vacate, modify, correct, or reform the judgment or grant a new trial. TEX.R.CIV.P. 329b; *St. Paul Ins. Co. v. Rahn,* 586 S.W.2d 701, 702 (Tex.Civ.App.—Corpus Christi 1979, no writ). However, the trial court's plenary power does not impeach the finality of the trial court's summary judgment. *Id.*

To determine whether a justiciable controversy existed between the parties,[8] we look to the time when the trial court granted the summary judgment. At the time, Human Services was withholding Medicaid vendor payments pending the outcome of the nursing home's administrative appeal. A justiciable controversy existed, and the trial court's judgment disposed of all issues and parties before the court. The mere fact that TDH and Human Services chose to reinstate the nursing home's certification and provider agreement after summary judgment was granted does not render the trial court's decision advisory or make the issue moot for purposes of appeal. TDH and Human Ser-

vices brought this appeal. Appellants are now before this Court urging that the trial court erred, as a matter of law, in declaring that Human Services is prohibited from withholding Medicaid vendor payments during the pendency of an administrative appeal. The case is not moot. We overrule point of error two.

In point of error three, appellants contend that the trial court erred in not requiring the nursing home to exhaust its administrative remedies. Appellants urge that the nursing home consented to the jurisdiction of the administrative body by electing to proceed under administrative remedies; therefore, the nursing home must exhaust those remedies before seeking judicial relief. The nursing home recognizes that it should pursue administrative remedies to challenge the termination of the Medicaid contract. The nursing home asserts, however, that it sought judicial review, not of appellants' substantive determinations, but of Human Services' suspension of vendor payments prior to the outcome of its administrative appeal.

■ Requiring one to exhaust his administrative remedies is a doctrine well established in administrative law. *Texas State Bd. of Examiners in Optometry v. Carp,* 162 Tex. 1, 343 S.W.2d 242, 246 (1961). The doctrine is applied in a number of different situations and is subject to numerous exceptions. A correct application of the exhaustion doctrine in specific circumstances depends upon a balancing of the underlying purposes of the doctrine against the injury claimed by the applicant for relief in equity.[9] *Public Util. Comm'n v. Pedernales Elec. Coop.,* 678 S.W.2d 214, 219 (Tex.App.—Austin 1984, writ ref'd n.r.e.).

---

8. A declaratory judgment is unavailable unless there is a justiciable controversy between the parties. The Texas Uniform Declaratory Judgments Act gives the court no power to pass upon hypothetical or contingent situations, or determine questions not essential to the decision of an actual controversy, even if such questions may require adjudication in the future. *Firemen's Ins. Co. v. Burch,* 442 S.W.2d 331, 333 (Tex. 1968).

9. The central purposes ordinarily attributed to the exhaustion doctrine include: (1) preventing

premature interruption of the administrative agency's duty of applying the regulatory statute to the facts of the specific case under consideration; (2) avoiding the improvident expenditure of judicial time and resources in the resolution of preliminary disputes that may be resolved by the administrative process; and (3) assuring a proper respect for the role and authority of the administrative tribunal. *Public Util. Comm'n v. Pedernales Elec. Coop.,* 678 S.W.2d 214, 219 n. 3 (Tex.App.—Austin 1984, writ ref'd n.r.e.).

▪ Parties are not required to pursue the administrative process regardless of the price. *Houston Fed'n of Teachers, Local 2415 v. Houston Indep. Sch. Dist.*, 730 S.W.2d 644, 646 (Tex.1987). One need not await final determination of an agency proceeding when the agency acts in excess of its statutory authority. *Pedernales*, 678 S.W.2d at 219–20. When an agency acts in contravention of a statute, its act is void; those affected have the right to appeal directly to the courts. *Benavides Indep. Sch. Dist. v. Guerra*, 681 S.W.2d 246, 249 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.).

▪ Human Services exceeded its statutory authority by withholding Medicaid vendor payments from the nursing home, without a contractual right to do so, pending completion of the nursing home's administrative appeal. When Human Services committed the wrongful act of withholding vendor payments, the nursing home properly resorted to the trial court to protect its vested property right. *See Pedernales*, 678 S.W.2d at 219–20; *see also Texas State Dep't of Human Resources v. Silverthreads Co.*, 569 S.W.2d 49, 51 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.).

Appellants contend, however, that even if Human Services incorrectly interpreted section 32.034(c) to grant it statutory authority to withhold vendor payments due to decertification by TDH, the nursing home may address this issue only *after* exhausting its administrative remedies. The nursing home urges that its suit to enjoin the suspension of Medicaid vendor payments is a collateral matter to the decertification and cancellation of the contract, which consists of a pure question of law. The nursing home contends, therefore, the doctrine of exhaustion of remedies is not applicable.

Generally, the doctrine of exhaustion of administrative remedies does not apply when only pure questions of law are involved. *Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 892 (Tex.1986). When the facts are not in dispute and only questions of law are presented, a plaintiff may seek relief from the trial court without exhausting administrative remedies. *Id.; see also Bexar County v. Northeast Indep. Sch. Dist.*, 802

S.W.2d 854, 859 (Tex.App.—San Antonio 1990, writ denied); *Birdville Indep. Sch. Dist. v. First Baptist Church*, 788 S.W.2d 26, 29 (Tex.App.—Fort Worth 1988, writ denied).

In the present case, the facts are undisputed. The dispositive issue concerns whether Human Services may withhold Medicaid vendor payments, absent the contractual authority to do so, based on the facility's decertification by TDH pending the outcome of the administrative appeals challenging the decertification and cancellation of the Medicaid provider agreement. Because the case involves a pure question of law, the trial court did not abuse its discretion in assuming jurisdiction before the nursing home exhausted its administrative remedies. We overrule point of error three.

We conclude that the trial court properly exercised jurisdiction over this cause. We also conclude that Human Services lacked the statutory and contractual authority to withhold vendor payments during the pendency of the nursing home's administrative appeal.

Accordingly, we affirm the trial court's judgment.