

# ATTORNEY GENERAL OF TEXAS

## GREG ABBOTT

February 2, 2005

The Honorable Craig D. Caldwell
Cherokee County Attorney
Post Office Box 320
Rusk, Texas 75785

Opinion No. GA-0302

Re: Whether Texas or New Jersey law applies to the payment of late fees on a contract between a Texas county and an out-of-state vendor (RQ-0266-GA)

Dear Mr. Caldwell:

You have submitted a copy of a contract between the Community Supervision and Corrections Department of Cherokee County (the "County") and Citicorp Vendor Finance, Inc. (the "Vendor") and ask, based on "the fact situation and the written contract signed by the County," whether "the Prompt Payment Act of Texas govern[s] when the County can be charged late fees" or whether "the County [is] bound by New Jersey law as it relates to the payment of late fees."[1] The Texas provision about which you inquire states:

> (a) Except as provided by Subsection (b), a payment by a governmental entity under a contract executed on or after September 1, 1987, is overdue on the 31st day after the later of:
>
> > (1) the date the governmental entity receives the goods under the contract;
>
> > (2) the date the performance of the service under the contract is completed; or
>
> > (3) the date the governmental entity receives an invoice for the goods or service.

TEX. GOV'T CODE ANN. § 2251.021(a) (Vernon Supp. 2004-05). You inform us that the Vendor has charged the County late payment fees for payments the County submitted within the time allotted

---

[1]Letter from Honorable Craig D. Caldwell, Cherokee County Attorney, to Nancy Fuller, Opinion Chair, Texas Attorney General (Aug. 20, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter August Request Letter].

under section 2251.021(a) of the Government Code.[2]  You further apprise us that the County Auditor, on informing the Vendor about the time period in section 2251.021(a), was told that, pursuant to the contract, New Jersey law and not section 2251.021(a) applies. *See* March Request Letter, *supra* note 2, at 3.  Paragraph 14 of the contract is a choice of law provision:

> 14.  Governing law: Consent to Jurisdiction: Waivers:  This lease shall be governed by and construed according to New Jersey Laws. You agree to be subject to suit in the New Jersey state and federal courts, consenting to such jurisdiction, provided nothing in this section shall be construed to limit the jurisdictions in which suit may be filed by any party.  You waive trial by jury in any action.  You hereby waive any and all rights and remedies granted by section 2A-508 through 2A-522 of the Uniform Commercial Code.

*Id.* at Exhibit 1.  In essence, this provision or term in the contract purports to import New Jersey law as the controlling law of the contract.  You do not provide us with information on any specific New Jersey law that conflicts with section 2251.021(a), but we assume from your question that the applicable New Jersey law contradicts the provisions of section 2251.021(a).  We note at the outset that this office does not review or construe contracts. *See* Tex. Att'y Gen. Op. Nos. JC-0032 (1999) at 4, DM-383 (1996) at 2, DM-192 (1992) at 10, JM-697 (1987) at 6.  Therefore, we answer your question generally and do not express any opinion with respect to the specific contract.  However, we think your question can be resolved by answering the legal issue of whether a political subdivision, such as a county, is authorized to include in a contract a term that effectively negates the provisions of chapter 2251.

As the governing body of a county, the commissioners court is a "creature of the Constitution." *Comm'rs Court v. Agan*, 940 S.W.2d 77, 79 (Tex. 1997) (citing TEX. CONST. art. V, § 8) (commissioners court is governing body of a county); *El Paso County v. Elam*, 106 S.W.2d 393, 395 (Tex. Civ. App.–El Paso 1937, no writ) (commissioners court is creature of constitution).  It may therefore exercise only those powers that are expressly conferred by the constitution and laws of this state or that are necessarily implied from such express powers. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 28 (Tex. 2003) (citing *Canales v. Laughlin*, 214 S.W.2d 451, 453 (Tex. 1948)); *see also* Tex. Att'y Gen. Op. Nos. GA-0235 (2004) at 1, JC-0439 (2001) at 2.  Similarly, it is well settled that the authority of a commissioners court to contract for a county is limited to that conferred either expressly or by necessary implication by the constitution and laws of this state. *See Jack v. State*, 694 S.W.2d 391, 397 (Tex. App.–San Antonio 1985, writ ref'd n.r.e.); *Galveston, H. & S.A. Ry. Co. v. Uvalde County*, 167 S.W.2d 305, 306 (Tex. Civ. App.–San Antonio 1942, writ ref'd w.o.m.); *see also* Tex. Att'y Gen. Op. No. JM-516 (1986) at 1 (citing *Canales*, 214 S.W.2d at 453).  For example, in *Texas & New Orleans Railroad Company v. Galveston County*, the court struck down part of a contract between a county and three railway companies in which the county agreed to indemnify the companies for future liability that might arise from the use of a jointly

---

[2]Letter from L. H. Crockett, Cherokee County Auditor, to Nancy Fuller, Opinion Chair, Texas Attorney General (Mar. 22, 2004) (on file with Opinion Committee) [hereinafter March Request Letter].

constructed causeway and drawbridge. *See T. & N.O.R.R. Co. v. Galveston County*, 169 S.W.2d 713, 715 (Tex. 1943). The holding was based on the court's observation that the parties could not have determined, at the time they made the contract, the extent of any future liability, and therefore could not have anticipated that the debt would be satisfied out of then-current revenues. *See id.* Because the county had not provided for "levying and collecting a sufficient tax to pay the interest thereon and provide at least two percent (2%) as a sinking fund" to pay the debt, the indemnity provision was invalid. *Id.*

We believe that where a county has express authority to enter into a contract, it impliedly has authority to negotiate the terms of the contract. *See Guynes v. Galveston County*, 861 S.W.2d 861, 864 (Tex. 1993) (stating that a county with authority to hire legal counsel could set terms of a contract with outside counsel in the exercise of its implied authority); Tex. Att'y Gen. Op. No. JM-748 (1987) at 1 (stating that terms of authorized contracts between counties and incorporated volunteer fire departments were determined by negotiation between the volunteer fire department and the county). However, the inclusion of certain terms in a contract may be outside the scope of that implied authority. "A county may contract only in the manner and for the purposes provided by statute, and is not bound by a contract beyond the scope of its powers or foreign to its purposes, or which is outside the authority of the officers making it." *Galveston, II. & S.A. Ry. Co.*, 167 S.W.2d at 307. Texas law admonishes parties that contract with counties to understand the limits of the county's authority. Parties that contract with counties are charged with knowledge of the law and contracts entered into in excess of the governmental unit's authority are made at the parties' risk. *See id.; see also City of Bonham v. Southwest Sanitation, Inc.*, 871 S.W.2d 765, 767 (Tex. App.–Texarkana 1994, writ denied).

We have found no Texas statute that prohibits a county from consenting to a choice of law provision that imports the law of another state into a contract. At the same time, we have found no Texas statute expressly permitting such a provision. However, the legislative development of chapter 2251 (payment for goods and services) provides evidence that the legislature intended the chapter to control over any conflicting contract. From its inception in 1985 until 1995, chapter 2251 contained an exception that explicitly stated the chapter was not applicable to "payments made by a governmental entity or a vendor in the event . . . the terms of a contract specify other times and methods of payment." Act of April 22, 1985, 69th Leg., R.S., ch. 82, § 7(a)(1), 1985 Tex. Gen. Laws 497, 499. Construed according to its plain language, *see Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865-66 (Tex. 1999) (court construes a statute by looking to the plain meaning of the statute's language), this exception required payment by political subdivisions to vendors be made according to the time limits and other parameters of chapter 2251 unless a contract between the governmental entity and the vendor provided otherwise. *See* Tex. Att'y Gen. Op. No. DM-88 (1992) at 1 (stating that chapter 2251's uncodified predecessor provided it did not apply when the terms of a contract specify other terms and methods of payment). In 1995, the Texas Legislature deleted this exception from chapter 2251. *See* Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 5.41(a), 1995 Tex. Gen. Laws 458, 497-98. Giving effect to the removal of this provision, *see* 2A Norman J. Singer, SUTHERLAND STATUTORY CONSTRUCTION § 47.25 (6th ed. 2000) (stating that there is generally an inference that a deletion from a statute is intentional), it follows that chapter 2251 no longer permits terms in a contract to alter or override the payment scheme set forth in the chapter. Pursuant to the change in the language of chapter 2251, we believe that a contractual choice

of law provision importing into a contract the law of another state that alters or overrides the payment scheme in section 2251.021(a) is not permitted.[3] Accordingly, such a term is not within the implied authority of a county to negotiate terms of a contract.

You direct our attention to *Fristoe v. Blum*, 45 S.W. 998 (Tex. 1898), and suggest that it leads to the conclusion that New Jersey law, as provided in the contract, controls. *See* August Request Letter, *supra* note 1, at 1. Your argument appears to construe *Fristoe* as removing from a political subdivision its governmental nature when the political subdivision enters into a contract. *Id.* at 2 ("If the county has no special status as a governmental entity when it entered the contract with Vendor . . . ."). Such an argument extends *Fristoe* too far. In *Fristoe*, the Texas Supreme Court recognized a distinction between the state as a sovereign and the state as a contracting party.[4] *Fristoe*, 45 S.W. at 999-1000; *Indus. Constr. Mgmt. v. DeSoto Indep. Sch. Dist.*, 785 S.W.2d 160, 163 (Tex. App.–Dallas 1989, no writ) (following rule in *Fristoe* that sovereign immunity does not apply to contracts made by state). *See generally Tex. Dep't of Health v. Tex. Health Enters.*, 871 S.W.2d 498, 506 (Tex. App.–Dallas 1993, writ denied) (holding that state lays aside its sovereign attributes when it contracts with a private citizen); *Ferris v. Tex. Bd. of Chiropractic Exam'rs*, 808 S.W.2d 514, 518 (Tex. App.–Austin 1991, writ denied) (restating rule that sovereign immunity does not bar citizen's rights to enforce contractual obligations against state). *Fristoe* holds that a state cannot use its sovereign immunity to avoid its contractual obligations. It does not remove a political subdivision's governmental nature, nor does it put a political subdivision on equal footing with an individual who has almost complete freedom of contract. Unlike an individual, a county may contract only as provided by statute. *Galveston, H. & S.A. Ry. Co.*, 167 S.W.2d at 307. *Fristoe* is inapposite here where the question relates to the more fundamental issue of whether the state's political subdivisions, particularly counties, have the authority to make contracts with terms that are outside the scope of their contracting authority.

Without speaking to any fact issues involved in your inquiry, we conclude that where a county is authorized to enter into a contract and negotiate the terms of the contract, it is not authorized to include in the contract a term, such as a choice of law provision, that overrides or negates the provisions of chapter 2251.

---

[3]We believe such a construction also comports with a more recent change to the statute. In 2003, the legislature added a non-waiver section to chapter 2251, *see* Act of May 28, 2003, 78th Leg., R.S., ch. 286, § 2, 2003 Tex. Gen. Laws 1252, 1253, which provides that a "person may not waive any right or remedy granted by this chapter. A purported waiver of any right or remedy granted by this chapter is void." TEX. GOV'T CODE ANN. § 2251.004 (Vernon Supp. 2004-05). An attempted waiver of the provisions of chapter 2251 that was overt and affirmatively stated an intent of the parties to waive the chapter would be void pursuant to section 2251.004. Likewise, a provision in a contract that has the effect of waiving the provisions of chapter 2251 must similarly be void under section 2251.004.

We do not read the addition of the non-waiver section in 2003 to mean that prior to 2003, the requirements of chapter 2251 could be waived. Pursuant to our discussion, *supra* p. 3, we believe that since the change in 1999, the requirements of chapter 2251 could not be altered by the terms of a contract. We construe the more recent non-waiver section merely as further indication that the legislature intended the provisions of chapter 2251 to control government contracts.

[4]*But see Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408 (Tex. 1997) (holding that state waives immunity from liability, but not suit, when it enters into a contract); *see also* TEX. GOV'T CODE ANN. § 2260.006 (Vernon 2000).

## S U M M A R Y

A county that is expressly authorized to enter into a contract impliedly has authority to negotiate the terms of the contract. The scope of that implied authority does not include a choice of law provision that imports the law of another state that effectively overrides or negates the provisions of chapter 2251 of the Texas Government Code.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee